## TAVANNES WATCH CO,. Inc. v. COMMIS-SIONER OF INTERNAL REVENUE.

### No. 219, Docket 21258.

United States Court of Appeals
Second Circuit.

Argued June 9, 1949.

Decided July 11, 1949.

CLARK, Circuit Judge, dissenting.

David Baumgarten, New York City, for petitioner.

Charles Oliphant, Theron Lamar Caudle, Washington, D. C., Ellis N. Slack and Harry Baum, Washington, D. C., for respondent.

Before L. HAND, Chief Judge, and CLARK and FRANK, Circuit Judges.

FRANK, Circuit Judge.

Before the adoption of the Revenue Act of 1942, payments made to employees' profit-sharing funds could be deducted either as "ordinary and necessary" business expenses, under Section 23(a) of the Code, 26 U.S.C.A. § 23(a), or under the specific provisions for such deductions of Section 23(p) of the Code. In the Revenue Act of 1942 Congress forbade any such deductions except in accord with Section 23 (p) of the Code as amended by that Act.

A contribution paid into a profit-sharing trust is deductible under Section 23(p), as amended, if, among other things, the trust "is exempt under section 165(a)" of the Code. Section 165(a), including sub-paragraphs (1) through (6), sets forth conditions which must be met if a trust is to be exempt. These conditions are quoted in full in the note.[1]

The amendments were made applicable with respect to taxable years beginning after December 31, 1941. In the taxpayer's case, that was its 1943 fiscal year.

---

[1] § 165(a) of the Code provides:

"(a) Exemption from tax. A trust forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall not be taxable under this supplement and no other provision of this supplement shall apply with respect to such trust or to its beneficiary—

"(1) if contributions are made to the trust by such employer, or employees, or both, for the purpose of distributing to such employees or their beneficiaries the corpus and income of the fund accumulated by the trust in accordance with such plan;

"(2) if under the trust instrument it is impossible, at any time prior to the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust, for any part of the corpus or income to be (within the taxable year or thereafter) used for, or diverted to, purposes other than for the exclusive benefit of his employees or their beneficiaries;

"(3) if the trust, or two or more trusts, or the trust or trusts and annuity plan or plans are designated by the employer as constituting parts of a plan intended to qualify under this subsection which benefits either—

"(A) 70 per centum or more of all the employees, or 80 per centum or more of all the employees who are eligible to benefit under the plan if 70 per centum or more of all the employees are eligible to benefit under the plan, excluding in each case employees who have been employed not more than a minimum period prescribed by the plan, not exceeding five years, employees whose customary employment is for not more than twenty hours in any one week, and employees whose customary employment is for not more than five months in any calendar year, or

"(B) such employees as qualify under a classification set up by the employer and found by the Commissioner not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees;

"and

"(4) if the contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees.

"(5) A classification shall not be considered discriminatory within the meaning of paragraph (3) (B) or (4) of this subsection merely because it excludes employees the whole of whose remuneration constitutes 'wages' under section 1426(a) (1) (relating to the Federal Insurance Contribution Act) or merely because it is limited to salaried or clerical employees. Neither shall a plan be considered discriminatory within the meaning of such provisions merely because the contributions or benefits of or on behalf of the employees under the plan bear a uniform relationship to the total compensation, or the basic or regular rate of compensation, of such employees, or merely because the contributions or benefits based on that part of an employee's remuneration which is excluded from 'wages' by section 1426(a) (1) differ from the contributions or benefits based on employee's remuneration not so ex-

However, "in order to afford time for existing deferred-payment plans and trusts and contracts to be amended so as to satisfy the requirements of Section 165(a)," [2] it was provided in Section 162(d) of the Revenue Act of 1942 that a profit-sharing plan in effect on or before September 1, 1942 should not become subject to the requirement of sub-paragraphs (3), (4), (5) and (6) of Section 165(a) until the beginning of the first taxable year beginning after December 31, 1942, and that such a plan should be considered to satisfy the requirements of those subparagraphs for the period before December 31, 1943, if the plan satisfied such requirements by December 31, 1943. Subsequently, by Section 3(a) of the Act of December 17, 1943, 57 Stat. 601, and Section 2(a) of the Act of December 20, 1944, 58 Stat. 830, Section 162(d) of the Revenue Act of 1942 was amended to provide that such a plan should be considered as satisfying sub-paragraphs (3) through (6) of Section 165(a) of the Code for the period up to June 30, 1945, if the plan satisfied all those requirements by June 30, 1945, and if by that time all parts of the plan necessary to meet these requirements had been made effective as of December 31, 1943.

Taxpayer contends that, by retroactively amending its plan, and obtaining the Commissioner's approval of that amended plan, it has fulfilled the requirements of Section 165(a) within the grace period given by Section 162(d) of the Revenue Act of 1942. The Commissioner claims that the grace period was extended only for compliance with sub-paragraphs (3) through (6) of Section 165(a), and, he argues, as the taxpayer's plan did not, during the fiscal years in question, comply with sub-paragraphs (1) and (2) of Section 165(a), it cannot claim an exemption under that section. The taxpayer answers that its amendment was completely retroactive to a date before the effective date of the Revenue Act of 1942, and that Congress intended to give all profit-sharing plans, for which deductions were allowed before that date, a grace period in which to qualify. In the alternative, taxpayer contends that the plan in operation before the amendment was a "trust" as that term is used in sub-paragraphs (1) and (2) of Section 165(a).

 We agree with this alternative contention, so we need not consider the other arguments. The issue thus distilled from the complicated collection of statutes involved is the meaning of the word "trust" in Section 165(a). That section must, of course, be interpreted in the light of the whole statutory scheme and of the purpose of Congress in enacting and amending the statute. "Trust" is not a term of art or of fixed content, and its meaning for the purposes of this section is not necessarily the same as under state law or as under other sections of the Internal Revenue Code. It is thus not conclusive that originally the parties decided not to set up what they called a "trust," for they were thinking of the payment of trustees' fees and the accounting in court which would necessarily be required if a state-law "trust" were established.

 There is certainly nothing novel about appointing a corporation to act as "trustee" to hold and invest a trust fund for the benefit of individuals. The purpose of the arrangement here was to adopt a convenient, inexpensive, employee-managed method of holding and investing the funds to be contributed by the taxpayer. The trust corpus could of course be the fund so contributed, and the cestuis, the employees participating in the plan. The broad powers of the corporation must be interpreted in the light of the agreement in accordance with which it was established. Each year, when the payments were made by the taxpayer to the corporation, the amounts paid were at once apportioned and credited to the individual employees.

---

cluded, or differ because of any retirement benefits created under State or Federal law.

"(6) A plan shall be considered as meeting the requirements of paragraph (3) of this subsection during the whole of any taxable year of the plan if on one day in each quarter it satisfied such requirements."

[2] H. Rep. 2333, 77th Cong., 1st Sess. (1942), 1942-2 Cum.Bull. 372, 452.

We think this corporate arrangement comes within what Congress had in mind in using the term "trust" in Section 165 (a). Admittedly, the contributions were deductible under the law as it existed before the enactment of the Revenue Act of 1942. That Act was primarily designed "to insure that stock bonus, pension, or profit-sharing plans are operated for the welfare of employees in general, and to prevent the trust device from being used for the benefit of shareholders, officials, or highly-paid employees," and to insure that "it shall be impossible for any part of the corpus or income to be used for purposes other than the exclusive benefit of the employees."[3] "In the interest of clarification and administration of the tax laws,"[4] it was decided to permit no deductions for pension or profit-sharing funds except under Section 23(p) of the Code. To "afford time for existing deferred-payment plans and trusts and contracts to be amended so as to satisfy the requirements of section 165(a),"[5] a grace period was allowed. With the new requirements of Section 165 (a) taxpayer complied, and it obtained the Commissioner's approval before the expiration of the grace period. This, we think, carries out the intent of Congress to continue allowing deduction of the contributions.

The other requirements of Section 165 (a) have been met by the taxpayer. It is arguable, to be sure, that, as the corporation had power to invest in the taxpayer's stock and there was testimony that, at least in 1941, it was intended that the fund should be invested in its stock, the fund is not "for the exclusive benefit" of the taxpayer's employees. In fact, the fund was not so invested, but was (with the exception of one short-term interest-bearing loan to the taxpayer) invested in government bonds. The Commissioner has made no objection to the deduction on this ground, and has approved the amended plan, which confers equally broad investing powers on the trustees.

Nor is it any objection that the original plan was not formally approved by the Commissioner before deductions for contributions made in accordance with the plan were taken. It is now necessary, under sub-paragraph (3) (B) of Section 165(a), as amended in 1942, to obtain the Commissioner's approval of some profit-sharing plans. As that requirement was not in force when the plan was first adopted, it could not then apply; when the requirement of approval was put into effect by the Revenue Act of 1942, taxpayer was given a grace period, mentioned above, within which to amend its plan and comply, and within that grace period it did so.

Reversed.

CLARK, Circuit Judge (dissenting):

I agree with Judge Opper's carefully reasoned opinion, 10 T.C. 544—concurred in by the entire Tax Court—that Tavannes Associates, Inc., was not a pension or profit-sharing "trust" for taxpayer's employees within the meaning of I. R. C. § 165(a) (1) and (2), a necessary condition to its being granted grace for complying with the remaining requirements, (3)–(6), of that section under I. R. C. § 162(d). Among relevant considerations are, first, the form of the legal device actually employed and the intent behind that choice. Concededly a corporation was chosen instead of a trust, because, as is said, "of the 'red tape' involved, the necessity of going 'through court,' and the fee expense" of the latter. While substance should control, if clear, yet these matters tend to show what the substance was. And since the assigned reasons might well have been adduced for an opposite conclusion, namely in favor of a trust, we may look beyond them to other objectives actually subserved by the plan worked out. Second, the beneficiaries were only a limited group of the employees and the benefits to the employer were substantial. Only those employees who remained with the employer for five years received any grants at all. Such grants

---

[3] H. Rep. 2333, 77th Cong., 1st Sess. (1942), 1942-2 Cum.Bull. 72, 450.

[4] Id. at 451.

[5] H. Rep. 2333, 77th Cong., 1st Sess. (1942), 1942-2 Cum.Bull. 372, 452.

were not in cash, but only in stock of the new company, granted out of moneys paid in to it, in the event the employer's business was profitable. Actually no stock was ever issued. It was expected that the new company would buy stock of the employer; it had already loaned money to the latter. Far from being a strictly limited trust for certain beneficiaries, it was a business company designed to be and actually of mutual help and assistance to both employer and the (older) employees. Third, the control was such as to facilitate these mutual objectives. The three original incorporators remained as directors, choosing their own successors until stock might be issued; and if the original directors were no longer employed by the taxpayer, then it could appoint substitute directors from among its employees.

Such factors as these show the close interconnection, if not the mutually helpful co-operation, of the two companies. They do not show a profit-sharing plan for "the exclusive benefit" of the employees or one where no part of the trust can be diverted to purposes other than such exclusive benefit. I would affirm the decision of the Tax Court.