**RUSSELL MANUFACTURING COMPANY**

v.

**UNITED STATES.**

No. 443–56.

United States Court of Claims.
July 15, 1959.

N. Barr Miller, Washington, D. C., for plaintiff. J. Marvin Haynes, Haynes & Miller, Oscar L. Tyree, Joseph H. Sheppard and Arthur H. Adams, Washington, D. C., were on the brief.

Eugene Emerson, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland and Lyle M. Turner, Washington, D. C., were on the brief.

JONES, Chief Judge.

This is a suit to recover an alleged overpayment in excess profits taxes for the taxpayer's fiscal year ending November 30, 1945. The controversy centers on the tax consequences of a plan for additional profit-sharing compensation for plaintiff's officers and key employees.

The primary question presented is whether plaintiff, an accrual basis taxpayer, is entitled to a deduction in its fiscal year 1945 for contributions made or accrued in that year to several profit-sharing trusts established for its officers and key employees. Or, in the alternative, is the taxpayer entitled to deduct in its fiscal year 1945 the amounts (previously contributed by it to the trusts) which either accrued for distribution or were actually distributed to officers and key employees by the trustee during the fiscal year 1945.

In April 1942, plaintiff adopted a profit-sharing plan for the benefit of its

officers and key management personnel. Under this plan, a prescribed percentage of plaintiff's profits each year, beginning with the fiscal year 1942 and continuing through the fiscal year 1945, was deposited in irrevocable trusts for distribution to plaintiff's executives over a period of several succeeding years. The purpose of the plan was to encourage the plaintiff's executives to remain in its employment by guaranteeing them additional compensation for future years, and to furnish an incentive for their best efforts in the successful continuation of plaintiff's business.

Pursuant to this plan of providing additional compensation for its officers and key management personnel, the taxpayer established a series of trusts during the years 1942–1945, inclusive. In general, each of the trust agreements provided that the plaintiff would irrevocably contribute specified percentages of annual profits to the trusts for the benefit of named officers and key personnel; that each person's rights in the trust fund would vest at the time the contribution was made; and that each beneficiary's specified share of the trust fund would, in all events, be paid to him unless he voluntarily chose to relinquish such share by resigning from plaintiff's employment prior to a fixed date, in which case the remaining beneficiaries would become entitled to his share.

All amounts contributed by the plaintiff to the trusts from its profits of the fiscal years 1942–1945 were distributed to the beneficiaries in accordance with the terms of the trusts during the calendar years 1944–1950. The reasonableness of the total compensation is not disputed.

In its income and declared value excess profits tax returns for fiscal year 1945 the plaintiff deducted from gross income the amount contributed to the trusts out of the profits of the fiscal year 1945, as additional compensation paid to the employee-beneficiaries. After an examination of these returns, the Commissioner of Internal Revenue disallowed this amount as a deduction in the fiscal year 1945 or any other year, and allowed no deduction to the taxpayer for the fiscal year 1945 or any other year on account of contributions by the taxpayer to, or distribution by the trustee from, any of the trust funds.

Prior to the adoption of the Revenue Act of 1942, payments made to deferred compensation plans by employers could be deducted either as ordinary and necessary business expenses under § 23(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(a), or under the specific deduction provisions of § 23(p). In 1942, § 23(p) was amended by § 162(b) of the Revenue Act of 1942, c. 619, 56 Stat. 798, 863. The effect of this amendment was to make § 23(p) the *exclusive* section for deductions claimed as a result of deferred compensation plans. Tavannes Watch Co. v. Commissioner, 2 Cir., 1949, 176 F.2d 211; Times Publishing Co. v. Commissioner, 13 T.C. 329, affirmed per curiam 3 Cir., 1950, 184 F.2d 376.

The 1942 amendment to § 23(p) was primarily designed to grant tax advantages to encourage the growth of pension, profit-sharing, and stock-bonus plans which met certain coverage and non-discrimination requirements set forth in § 165(a), 26 U.S.C.A. § 165(a). Thus, under subsections (A), (B), and (C) of § 23(p) (1), Congress permitted contributions made by employers to the so-called "qualified" plans to be deducted in the taxable year when paid. Since subsections (A), (B), and (C) are admittedly not applicable because the trusts do not qualify under § 165(a), the deduction claimed in the suit at bar is controlled by subsection (D) of § 23(p) (1).

Subsection (D) of § 23(p) (1) provides that (1) contributions paid by an employer to or under a stock-bonus, pension, profit-sharing, or annuity plan or (2) compensation paid or accrued on account of any employee under a plan deferring the receipt of such compensation shall be deductible:

"In the taxable year when paid, if the plan is not one included in paragraphs (A), (B), or (C), if the employees' rights to or derived from

such employer's contribution or such compensation are *nonforfeitable* at the time the contribution or compensation is paid." [Emphasis supplied.]

Plaintiff does not dispute the fact that the rights of any beneficiary here could be forfeited at the time the employer's contribution was paid to the trust. It contends, however, that the rights of the employees as a group under the "irrevocable" trusts involved in this case were not forfeitable to the employer; and that this is sufficient "nonforfeitability" to satisfy the requirement of the statute and to permit the plaintiff to claim a deduction for contributions paid to the trusts in 1945. We are unable to agree. It seems evident from the legislative history and from a common sense reading of the statute that the phrase "employees' rights" refers to the rights of the individual beneficiaries. Times Publishing Co. v. Commissioner, supra; William M. Bailey Co. v. Commissioner, 15 T.C. 468, affirmed per curiam, 3 Cir., 1951, 192 F.2d 574; H. S. D. Co. v. Kavanagh, D.C.E.D.Mich.1949, 88 F.Supp. 64, reversed on other grounds 6 Cir., 1951, 191 F.2d 831.

■ The plaintiff next contends that, if it is not entitled to deduct the contributions paid to the trusts in 1945, it is entitled to deduct in 1945 the amounts of compensation which accrued for payment, or which were actually paid, to the employee-beneficiaries in that year. As to the amounts of compensation which merely *accrued* in the fiscal year 1945, a deduction could not be allowed in that year in the face of a clear statutory provision that such compensation shall be deductible only in the taxable year when "paid." Section 23(p) (1) (D).

A closer question is presented by the taxpayer's claim for a deduction for the amount of compensation actually paid to the employee-beneficiaries in the fiscal year 1945.

On the one hand, the Treasury Department has interpreted subsection (D) of § 23(p) (1) to mean that "If an amount is paid during the taxable year but the rights of the employee therein are forfeitable at the time the amount is paid, no deduction is allowable for such amount *for any taxable year.*" U.S.Treas.Reg. 111, § 29.23(p)–11, as amended, T.D. 5666, 1948–2 Cum.Bull. 46. [Emphasis supplied.]

■ Opposed to the Treasury's interpretation are the plain wording of the statute and the statute's legislative history.[1] It is certain that Congress enacted the 1942 amendment to § 23(p) in order to limit the tax advantages available under that section to those deferred compensation plans which possess extended coverage and nondiscriminatory features.[2] This policy was continued under the Internal Revenue Code of 1954.[3] Conversely, it intended to *deny* tax *advantages* to nonqualifying plans. But it is equally clear that Congress did not intend to stamp out or penalize the nonqualifying plan by completely disallowing the deduction of ordinary and necessary business expenses resulting from such a plan.

The language of the statute bears out this construction. Section 23(p) (1) (D) provides that "compensation" paid an employee under a nonqualifying plan (as distinct from a "contribution" paid by an employer to a stock-bonus, pension, profit-sharing, or annuity plan)[4] shall be deductible:

---

1. Since T.D. 5666 was not promulgated until six years after enactment of the 1942 amendment to § 23(p), we do not feel the regulation is entitled to the benefit of the rule of contemporaneous construction. See Royer's, Inc. v. United States, 3 Cir., 1959, 265 F.2d 615.

2. H.R. Rep. No. 2333, 77th Cong., 2d Sess. 50–51 (1942).

3. H.R. Rep. No. 1337, 83d Cong., 2d Sess. 42 (1954).

4. The Senate changed the House version of § 23(p) to refer to the employer's payments to or under stock-bonus, pension, profit-sharing, or annuity plans as "contributions" instead of "compensation." Reference to them as "contributions", as something distinct from "com-

· "*In the taxable year when paid* * * *, if the employees' rights to or derived from * · * * such compensation are nonforfeitable at the time the * * * compensation is paid." [Emphasis supplied.]

No one will deny that the compensation involved in the case at bar was nonforfeitable at the time it was paid to employee-beneficiaries. The defendant, however, takes the position that the phrase, "in the taxable year when paid," should read "in the taxable year when paid by the employer." The defendant then argues that if the compensation is paid by a *trustee* it is not compensation "paid by the employer," and is therefore not deductible. The short answer to this is that the statute makes no such provision.

In fact, the wording of § 23(p) (1) strongly indicates a congressional anticipation that "compensation" would be paid by a trustee, and a congressional intention that compensation paid by a trustee should be deductible. In the first paragraph of § 23(p) (1) Congress refers to "contributions" "paid by an employer," whereas "compensation" is mentioned, significantly we think, without any reference to the person who hands the compensation over to the employee.

The defendant has directed our attention to an attempt which was made, in the course of adopting the 1954 Code, to change § 23(p) (1) (D). H.R. 8330, 83d Cong., 2d Sess. § 403(a) (5) (1954), would have granted the employer a deduction for contributions to nonqualified plans "in the taxable year when the amount is actually distributed or made available to a distributee * * *." The defendant views the failure to enact this provision as evidence that Congress was satisfied with the existing law and that the amended Treasury Regulation interpreting § 23(p) (1) (D) is in accord

with ·the intention of Congress. The court does not find in this failure to approve the proposed revision of § 23 (p) (1) (D) the significance attributed to it by the defendant. This proposed revision would have done more than simply reverse that interpretation; it would have permitted a deduction at the time the compensation was distributed, even though the right of the employee was nonforfeitable at the time the contribution was made by the employer to the trust. It is therefore difficult, if not impossible, to discover what Congress was approving or disapproving by this action.

The court is persuaded that the regulation is contrary to the clear provision of § 23(p) (1) (D) insofar as it denies plaintiff a deduction for the amount of compensation paid the employee-beneficiaries in fiscal year 1945. A regulation is for the interpretation and application of a statute, but it cannot take away rights or privileges which the Congress has given.

The court holds that the plaintiff is entitled to a deduction in 1945 for the amounts of compensation which were actually paid out of the trusts to the employee-beneficiaries in that year.[5]

■ A second question presented in this case relates to the computation of the taxpayer's accumulated earnings and profits, and thus of its invested capital, as of the first day of its fiscal year 1945, for excess profits tax purposes.

For the fiscal year 1945, the taxpayer computed its excess profits credit under the invested capital method in § 718(a) (4) of the Internal Revenue Code of 1939, 26 U.S.C.A.Excess Profits Taxes, § 718(a) (4).

In its tax returns for the fiscal years 1942, 1943, and 1944, the taxpayer had claimed as deductions its contributions to the trusts from the profits of such years,

pensation", was in accord with general usage and the provisions of § 165. See S.Rep. No. 1631, 77th Cong., 2d Sess. 138 (1942).

5. We have carefully examined the cases of Wesley Heat Treating Co. v. Commis-

sioner (Spindler Metal Processing Co. v. Commissioner, and Wesley Steel Treating Co. v. Commissioner), 7 Cir., 1959, 267 F.2d 853, and find they are clearly distinguishable on the facts from the instant case.

in the total amount of $130,400. In 1955, the Commissioner of Internal Revenue disallowed the deductions claimed for the fiscal years 1942, 1943, and 1944 for contributions to the trusts. Deficiencies totaling $164,844.25 were duly assessed and paid.

In computing the taxpayer's invested capital credit for its fiscal year 1945, the Commissioner reduced the taxpayer's accumulated earnings and profits at the beginning of such year by the amount of the total net tax deficiency of $164,844.25 determined by him for the years 1942–1944, which thereby reduced the taxpayer's excess profits credit for such year. Also, in computing such credit, the Commissioner did not increase its earnings and profits at the beginning of the fiscal year 1945 by the amount of the claimed deductions of $130,400 as contributions to the trusts; nor did he otherwise include in the taxpayer's invested capital at the beginning of fiscal year 1945 any part thereof.

During the fiscal year 1941, the taxpayer sustained a bad debt loss on the basis of which it filed a claim for refund of 1941 income and excess profits taxes. In March 1957, the Commissioner allowed such claim. As a result, the taxpayer's previously determined tax liability for 1941 was reduced in the amount of $47,161.69 The Commissioner, however, has made no adjustment of the taxpayer's invested capital for any of the fiscal years 1941–1945 on account of such tax reduction.

Section 718 of the Internal Revenue Code of 1939 [6] provides that there shall be included, together with other amounts, in taxpayer's equity invested capital "the accumulated earnings and profits as of the beginning of such taxable year."

Treasury Regulations 112, § 35.718–2, states:

"The term 'accumulated earnings and profits' is not defined in the Internal Revenue Code. * * * In computing accumulated earnings and profits as of the beginning of the taxable year, a taxpayer keeping its books and making its income tax returns on the accrual basis shall subtract the income and excess profits taxes for the preceding taxable year. * * * "

Section 35.718–2 of the regulation also provides that "the concept of 'accumulated earnings and profits' for the purpose of the excess profits tax is the same as for purposes of the income tax."

Section 41 of the Internal Revenue Code of 1939 provides:

"The net income shall be computed upon the basis of the taxpayer's annual accounting period * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income." 26 U.S.C.A. § 41.

The issue here raised is whether the taxes subtracted, pursuant to Treasury Regulations 112, § 35.718–2, are those finally determined by the Commissioner or those reported by the taxpayer on the returns. The taxpayer's failure to subtract the amount of tax liability finally determined by the Commissioner in computing accumulated earnings and profits increases the amount of the taxpayer's invested capital, and thus its excess profits credit, and thereby reduces its taxes.

The Commissioner held that the amount of the taxpayer's income and excess profits tax liabilities for the years 1942, 1943, and 1944, as finally determined, must be accrued and deducted in each respective year in finally computing the amount of taxpayer's "accumulated earnings and profits" as of the first day of fiscal year 1945. The taxpayer's argument to the contrary is based on the

6. Added by § 201, Second Revenue Act of 1940, c. 757, 54 Stat. 974.

well-established rule that an accrual basis taxpayer may not deduct the amount of a contested liability as an expense for income tax purposes until the contest is concluded and the amount of the liability is finally determined.

The Tax Court has considered the question, and has held that for the purposes of Treasury Regulation 112, § 35.718–2 (a), income and excess profits taxes must be accrued by an accrual basis taxpayer in the year in which they arose, regardless of whether its liability therefor became definite and ascertainable in amount in that year or a subsequent year. Stern Brothers & Co., 1951, 16 T.C. 295.

In reaching its conclusion, the Tax Court acknowledged the recognized rule established in Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270, and Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725, that a tax which is being contested does not accrue until liability therefor is finally determined; but the Tax Court held that such a rule was inapplicable when the purpose of the accrual of the tax was to reflect the amount of the corporation's accumulated earnings and profits at the beginning of the taxable year for invested capital purposes. The Tax Court pointed out that it is necessary to distinguish the accrual of federal income and excess profits taxes called for by Treasury Regulations 112, § 35.718–2(a), from the more usual accrual for purposes of deduction from, or inclusion in, income; that the accrual of these taxes results in no deductible expenses in computing taxable income; and that if accumulated earnings and profits at the start of any taxable year are to show the true financial status of an accrual basis taxpayer, an adjustment must be made for income and excess profits taxes arising the preceding year. "Thus the accrual called for by this subsection

of the Regulations is simply an adjustment to accumulated earnings."

The Tax Court noted that:[7]

"To hold otherwise and invoke the rule that a contested tax is accruable only in the taxable year when liability is finally determined would completely defeat the purpose of the Regulation. Thus by simply contesting liability for income and excess profits taxes a taxpayer could postpone their accrual until after the year in which they arose, and its accumulated earnings and profits for the succeeding year would never be diminished by the amount of these taxes. * * * We can not think that such a result was intended by Congress."

We agree with the reasoning of the Tax Court in the Stern Brothers & Co. case.[8] Accordingly, the court holds that the Commissioner of Internal Revenue may adjust the taxpayer's excess profits credit at the beginning of the fiscal year 1945 by reducing the taxpayer's accumulated earnings and profits by the amount of the tax deficiencies for the fiscal years 1942–1944, inclusive. Likewise, the taxpayer is entitled to the benefit of the adjustment for invested capital purposes of the amount of taxes allowed as a refund as a result of the partial allowance for a bad debt claim.

Plaintiff is entitled to recover, together with interest thereon as provided by law with the amount of recovery to be determined pursuant to Rule 38(c), 28 U.S. C.A.

It is so ordered.

WILBUR K. MILLER, Circuit Judge, sitting by designation, and LARAMORE and MADDEN, Judges, concur.

WHITAKER, Judge, dissents.

7. Stern Brothers & Co., 16 T.C. at page 323.

8. The reasoning of the Tax Court in the Stern Brothers & Co. case has been followed in Commissioner v. Pacific Affiliate, Inc., 1952, 19 T.C. 245, affirmed

per curiam, 9 Cir., 1955, 224 F.2d 578, certiorari denied 1956, 350 U.S. 967, 76 S.Ct. 437, 100 L.Ed. 840; Geo. W. Ultch Lumber Co., 1953, 21 T.C. 382; Drybrough v. Commissioner, 6 Cir., 1956, 238 F.2d 735; Estate of Esther M. Stein, 1956, 25 T.C. 940.