**MISSISSIPPI RIVER FUEL COR-
PORATION**

v.

**The UNITED STATES.**

No. 180-60.

United States Court of Claims.

April 5, 1963.

Christian B. Peper, St. Louis, Mo., for plaintiff.

John B. Jones, Jr., Washington, D. C., with whom was Asst. Atty. Gen., Louis F. Oberdorfer, for defendant. Edward S. Smith, Lyle M. Turner, Philip R. Miller, and George Willi, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and WHITAKER, LARAMORE, DURFEE, and DAVIS, Judges.

JONES, Chief Judge.

The plaintiff seeks as a business deduction from its gross income of 1953 amounts which it had contributed by transfer to an employees savings trust fund. These sums had been added over a 3-year period as a matching fund to a like amount voluntarily contributed by participating employees. The total accumulated funds were distributed and paid to the employees in the year 1953 on a percentage basis in proportion to their respective contributions. The sums had been contributed to the trust fund during the previous three years. No part of the funds were to be returned to the plaintiff. There is no dispute as to the expense incurred by the plaintiff. The defendant asserts that in the facts of this case and under the terms of the instrument and the wording of the applicable statute plaintiff is not entitled to a deduction. The plaintiff disputes this. Admittedly no deduction has been allowed at any time.

The plaintiff at all pertinent times was engaged in the sale of natural gas and operated an interstate pipeline transporting gas.

On January 4, 1950, the plaintiff duly established the Mississippi River Fuel Corporation Savings Trust with the Mercantile-Commerce Bank & Trust Company as trustee.

According to the terms of the duly authorized trust instrument,[1] any employee of the company with one year's service was given the privilege of permitting a deduction from his salary of any sum designated by such employee not exceeding $25 per month, and to have such amount transferred to the trust. A record was to be kept of the amount so contributed by each participating employee. It was agreed that the plaintiff would match any amount of any employee's contribution by contributing a like sum to the trust.

[1]. A summary of the plan is set out in finding 6.

The trust was to terminate on December 31, 1952, and within 30 days thereafter each remaining participant was to be paid from the trust his own contributions plus the matching contributions by the plaintiff for his benefit, together with his pro rata share of the earnings of the trust. If the participant's employment were terminated because of death, retirement, disability, or layoff, he was to receive from the trust the amount contributed by him plus the amount contributed by the plaintiff. If any participant voluntarily resigned, or was discharged for cause, or withdrew from the trust he was to receive only his own contributions to the trust. In that event the amount which the plaintiff had contributed to match his savings was to be added to the sum available for others who continued to comply with the terms of the trust instrument.

In no instance was the plaintiff to receive back any sums that had been contributed to the matching program.

According to the terms of the trust instrument, the trust was to be in effect through the years 1950, 1951, and 1952.

The funds were distributed to the remaining participants by the trustee on January 2, 1953. The parties have stipulated that all of the contributions made by the plaintiff were paid from the trust during the early part of 1953.

For the years 1950, 1951, and 1952, respectively, the plaintiff deducted the respective contributions made to the savings trust in each of those years. The Commissioner of Internal Revenue disallowed each of these deductions.

The plaintiff litigated the right to a deduction for its contribution in 1950 in the Tax Court which decided adversely to plaintiff in 29 T.C. 1248 (1958). It litigated its contributions for the years 1951 and 1952 in Mississippi River Fuel Corporation v. Koehler, D.C., 164 F. Supp. 844 (1958). The deductions were denied and the decision was affirmed by the United States Court of Appeals, 8th Circuit, 266 F.2d 190, cert. denied 361 U.S. 827, 80 S.Ct. 75, 4 L.Ed.2d 70 (1959). In each instance it was held that the deferred compensation was not deductible during the years 1950, 1951, and 1952. These cases involved only the immediate deductibility as the contributions were made in the three years mentioned.

The case of Wesley Heat Treating Co. v. Commissioner, 7 Cir., 267 F.2d 853 (1959), is clearly distinguishable on the facts from the case at bar.

Plaintiff filed a timely claim for refund of taxes paid in 1953 on the ground that the contributions were deductible because the actual payment was made during that year.

The latter issue is now before the court for determination. The applicable portion of the statute in relation to deductions is set out in the footnote.[2] The

2. Internal Revenue Code of 1939, 26 U.S.C. (I.R.C.1939) § 23 (1952 ed.), as follows:
"§ 23. Deductions from gross income
"In computing net income there shall be allowed as deductions:
"(a) Expenses
"(1) Trade or business expenses.
"(A) In general.
"All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered;
* * *.
 *   *   *   *   *
"(p) Contributions of an employer to an employees' trust or annuity plan and compensation under a deferred-payment plan.

"(1) General rule.
"If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under subsection (a) but shall be deductible, if deductible under subsection (a) without regard to this subsection, under this subsection but only to the following extent:
"(A) In the taxable year when paid, if the contributions are paid into a pension trust, and if such taxable year ends within or with a taxable year of the trust for which the trust is exempt under section

parties have agreed that the contributions made by plaintiff to the Mississippi River Fuel Corporation Savings Trust in the years 1950–1952, inclusive, constituted deferred compensation reasonable in amount for the services actually rendered by that employee.

It will be noted that generally speaking all ordinary and necessary expenses incurred during the taxable year are normally allowed as a business deduction. However, under the terms of section 23 (p) of the 1939 Code (26 U.S.C. § 23 (1952 ed.)) certain specific provisions or modifications are made for trust or annuity plans and deferred payment plans. In such cases deductions are to be permitted under the terms of section 23(p) (1) (A), (B), (C), or (D). The deductions under the provisions of section 23 (p) (1) (A), (B), and (C) for the current years 1950, 1951, and 1952 have been decided adversely to the plaintiff in the cases to which reference is made above.

This leaves a sole issue in this case: whether a deduction is permitted under subparagraph (D) which stipulates that deduction may be allowed in cases of deferred payment plans under the following conditions:

"(D) In the taxable year when paid, if the plan is not one included in paragraphs (A), (B), or (C), if the employees' rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid."

This court held in the case of Russell Manufacturing Company v. United States, 146 Ct.Cl. 833, 175 F.Supp. 159 (1959), involving this issue, that the payment became nonforfeitable as to participating employees in the year when payment by distribution is actually made to the employee. The defendant asks that we overrule our decision in Russell Manufacturing Company, but after consideration we adhere to the principles enunciated in that case. It is not only in accord with the wording of the law, but produces a just and nondiscriminatory result.

We held in the Russell Manufacturing Company case that the payments, whether or not nonforfeitable during the current or accumulating years, became nonforfeitable during the year when the funds were actually paid to the employees. By that time all the rights of the employees to participate in the funds had matured, and all the contingencies had been met. There was nothing left but to make payment, and necessarily the obligations of the instrument were then nonforfeitable. That was the time actual payment was made.

In the instant case 1953 was the year when payment was made by distribution and the trust was liquidated. It is true two other similar trust instruments followed serially in two subsequent periods of three years each, but each was a complete program in itself and no one program was in any way dependent upon the other, even though all employees had the privilege of participation on an equal basis in any or all of them.

If the defendant prevails the plaintiff would not be entitled to any deduction for contributions to this fund for the

---

165(a), in an amount determined as follows:

\* \* \* \* \*

"(B) In the taxable year when paid, in an amount determined in accordance with subparagraph (A) of this paragraph, if the contributions are paid toward the purchase of retirement annuities and such purchase is a part of a plan which meets the requirements of section 165(a), (3), (4), (5), and (6), \* \* \*.

"(C) In the taxable year when paid, if the contributions are paid into a stock bonus or profit-sharing trust, and if such taxable year ends within or with a taxable year of the trust with respect to which the trust is exempt under section 165(a), in an amount not in excess of \* \* \*.

"(D) In the taxable year when paid, if the plan is not one included in paragraphs (A), (B), or (C), if the employees' rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid."

employees no matter how worthy the plan might be. To offer incentives or rewards for loyal, faithful, and efficient service is in accord with the best traditions of a free country. In addition, this method of cultivating good will and good public relations is frequently used in different forms by many successful business concerns.

To refuse to allow any deduction whatever for money spent in such a fashion would be to deny ordinary expenses to a business concern that was utilizing progressive methods of business. It would put a premium on a concern that selfishly refused to adopt an incentive plan and a penalty on the more advanced business organization which was willing to make such a provision. Such a deduction for expenditures actually made for a worthy business purpose should not be denied unless the language of the statute compelled such a course. We do not think it does.

In fact, we think it rather clear that the provisions of section 23(D) were inserted by the Congress for the purpose of caring for such a situation. It specifically provides that the expenditure shall be the basis for deductions in the year when paid. On this particular phase we quote from our opinion in Russell Manufacturing Company v. United States, supra, 146 Ct.Cl. at page 839, 175 F.Supp. at page 162, as follows:

"The language of the statute bears out this construction. Section. 23(p) (1) (D) provides that 'compensation' paid an employee . under a nonqualifying plan (as distinct from a 'contribution' paid by an employer to a stock-bonus, pension, profit-sharing, or annuity plan) shall be deductible:

" 'In the taxable year when paid * * *, if the employees' rights to or derived from * * * such compensation are nonforfeitable at the time the * * * compensation is paid.' [Emphasis supplied.]

No one will deny that the compensation involved in the case at bar was nonforfeitable at the time it was paid to employee-beneficiaries. The defendant, however, takes the position that the phrase, 'in the taxable year when paid,' should read' 'in the taxable year when paid by the employer.' The defendant then argues that if the compensation is paid by a *trustee* it is not compensation 'paid by the employer,' and is therefore not deductible. The short answer to this is that the statute makes no such provision."

The defendant suggests the issue that the payments were actually made by the trustee rather than by the plaintiff. This is invoking form rather than substance. As a matter of fact the wording of section 23(p) (1) strongly indicates a congressional anticipation that "compensation" would be paid by a trustee, and a congressional intention that compensation paid by a trustee should be deductible. In the first paragraph of section 23 (p) (1) the Congress refers to "contributions" "paid by an employer," whereas "compensation" is mentioned, significantly we think, without any reference to the person who hands the compensation over to the employee.

The defendant now adds to the legislative history of section 23(p) some excerpts from the 1942 testimony of a Treasury expert and comment by one Member of the Congress. Neither of these discloses congressional intent.[3] It becomes apparent from a reading of the reports of the Committees and other comments that what the Congress had in mind was to prevent the abuses which had arisen sometimes where there were longtime annuity payments and continuing pensions, and especially in cases where stock options and other plans were accorded to officials of an organization to

---

3. Seibert v. United States, 129 U.S. 192, 9 S.Ct. 271, 32 L.Ed. 643 (1889); Patterson v. United States, 359 U.S. 495, 79 S.Ct. 936, 3 L.Ed.2d 971 (1959).

the exclusion or the disadvantage of the regular employees.[4]

Neither of these difficulties arises here because the same privileges were given to all the employees on the same dead level of equality. There was no advantage to anyone. There is no question of longtime annuities or pension payments, for the plan was ended by its own terms and final payment was made in 1953.

As a matter of fact it is apparent that the Congress was attempting by the 1942 and 1954 provisions to avoid the abuses that sometimes arise in connection with the long-term plans. For the purpose of avoiding inequity between business concerns or denial of actual expenditures properly made it inserted the language of section 23(p) (1) (D).

This deferred payment plan was in essence a continuing action, somewhat in the nature of an escrow agreement where final action is to await certain happenings, and is sometimes dependent on certain contingencies. While the contribution was made currently, the payment to the employees was not to be finally made until the year 1953 when certainly the obligation became complete and nonforfeitable by anyone, either employer or employee. The matter is thus brought strictly within the terms of subparagraph (D).

If the plaintiff by the terms of the trust instrument had merely made the promise to pay and had not actually placed the money in the hands of the trustee until in 1953, at the time it was paid out and distributed, or if the company had retained the right to revoke at any time before the funds were paid or distributed there would have been no doubt of the right to deduct the expenditure. In fact, the defendant's counsel had no choice but to admit as much in response to a question during the oral argument.

Strangely enough the Revenue Ruling 55–525, 1955–2 Cum.Bull. 543, would permit just that. Thus we have the anomalous situation where under the regulations the employer who gives his employees the lesser protection is afforded the greater tax benefit.

If the trustee had refused to pay in the year 1953 or if the employer had tried to stop payment there would have been many unhappy employees and probably a multiplicity of lawsuits.

In fact, the deposit of the money by the plaintiff in the hands of the trustee was a better arrangement from the standpoint of the employees than would have been a mere deposit by the employees with a promise to match on the part of the plaintiff because such a plan might have to some extent jeopardized the rights of the employees, especially if the employer had happened to have financial difficulties before the time of the ultimate payment.

A careful reading of the language of the statute shows that subparagraph (D) was clearly intended by the Congress to cover just such cases as we have before us at this time. This particular plan is as free from any possible objections as can be conceived. If this case does not fall within the provisions of subparagraph (D) it is difficult to visualize a case that would qualify.

We find that in so far as any regulation provides for denial of a deduction in this type of case when the rights of the participants remaining in the trust had become completely vested and nonforfeitable on December 31, 1952, before compensation payments were made in January 1953, according to the terms of the instrument, such regulation goes beyond the terms of the statute and is to

4. Produce Reporter Company, 18 T.C. 69 (1952), affirmed C. I. R. v. Produce Reporter Co., 207 F.2d 586 (C.A.7, 1953); McClintock-Trunkey Co. v. Commissioner, 217 F.2d 329 (C.A.9, 1954); Tavannes Watch Co. v. Commissioner, 176 F.2d 211 (C.A.2, 1949); Lincoln Electric Co. Employees' Profit-Sharing Trust v. Commissioner, 190 F.2d 326 (C.A.6, 1951); H. Rep.No.2333, 77th Cong., 2d Sess., 1942–2 Cum.Bull. 413, 450–452; Sen.Rep.No. 1631, 77th Cong., 2d Sess., 1942–2 Cum. Bull. 541, 606–610.

that extent invalid. We do not find any of the reasons presented by the defendant as persuasive. The language of the statute itself justifies the conclusion we reached in the Russell case, and the facts in the case at bar and the language of the statute even more strongly support and justify a similar conclusion. To deny recovery in the case for expenditures actually made in the due course of business would place a penalty upon a business concern that had established and faithfully carried out a plan of liberal and fair treatment of its employees. We believe that neither the wording of the statute nor the intent of the Congress as reflected in the terms of the act calls for such a conclusion.

Plaintiff is entitled to recover and judgment is entered for plaintiff with the amount of recovery to be determined under Rule 38(c).

DAVIS, Judge (concurring).

The central factor in this case, for me, is the decision of this court, some three-and-a-half years ago, in Russell Manufacturing Co. v. United States, 146 Ct.Cl. 833, 175 F.Supp. 159 (1959). All agree that that ruling is precisely controlling, unless it is to be overruled as incorrect. The defendant—marshalling all of the points supporting its stand—asks the court to take that step. In responding to the invitation, we must start, in my view, with the premise that the disposition of this case cannot be approached as if Russell Manufacturing had never been decided. The question is not what we would hold if we now took a fresh look but whether we should take that fresh look. A court should not scrutinize its own prior ruling—putting constitutional adjudication, which has its own standards, to one side—merely because, as now constituted, it might have reached a different result at the earlier time. Something more is required before a reexamination is to be undertaken: (a) a strong, even if not yet firm, view that the challenged precedent is probably wrong; (b) an inadequate or incomplete presentation in the prior case; (c) an

intervening development in the law, or in critical comment, which unlocks new corridors; (d) unforeseen difficulties in the application or reach of the earlier decision; or (e) inconsistencies in the court's own rulings in the field. Where these or like reasons for re-opening are lacking, respect for an existing precedent is counselled by all those many facets of stability-plus-economy which are embodied in the principle of *stare decisis*. Cf. Flippin Materials Co. v. United States, Ct.Cl., decided Jan. 11, 1963, 312 F.2d 408, 417.

I can find no sufficient reason for a reconsideration here. Certainly, it is far from clear that the Russell Manufacturing opinion is wrong, if it be wrong at all; even from the Government's viewpoint, the issue must be considered very close. By design or inadvertence, the bare language of Section 23(p) seems to fit snugly with the court's result, and the legislative history which the defendant offers is not conclusive (though it tends) the other way. The possible disharmony with the general law of taxation in allowing the plaintiff to take a deduction for the payments made in 1953 by another taxable entity (the trustee) would be matched or more than matched (if defendant were to prevail) by the disharmony of altogether disallowing any deduction for a genuine business expense. No basic tax policy is disserved, so far as I can see, by the court's holding. The Government's position is narrow. Its primary point is that we should follow this statute as written and that Congress wrote it so as to bar any deduction at any time for plaintiff's payments to the fund, even though slightly altered plans would have allowed deductions. This may possibly be a correct reading of the particular legislation, but it is not clearly so, and no wide or awkward consequences of significance flow from the contrary construction. Defendant stresses the Treasury Regulation which Russell Manufacturing held invalid, but the normal deference to such regulations is sharply lessened in this instance by the six-year gap between the enactment

of Section 23(p) in 1942 and the 1948 amended regulation on which the Government relies.

There is no other proper basis for re-evaluation of the earlier decision. One suggestion is that in 1959 the defendant failed to present the legislative history adequately. But the basic documents and arguments were then before the court; the additions now made are merely peripheral. The claimed direct conflict with Wesley Heat Treating Co. v. Commissioner, 267 F.2d 853 (C.A.7, 1959), does not exist. Unlike plaintiff, that taxpayer sought its deductions, not under Section 23(p) (1) (D), but under Section 23(a) (the general provision for deduction of business expenses under the 1939 Code); the Seventh Circuit rightly held that, for employee payments of this general type, Section 23(p) governs exclusively. The professional comment on Russell Manufacturing, which appears to be divided,[5] is not such as to induce reconsideration. Nor are there other post-1959 developments which we are asked to take into account.

The net of it is that this is a proper case in which to decline the bid to re-examine our prior ruling. For us, what was decided yesterday should do for today. I join, therefore, in the judgment for the taxpayer, on the authority of the Russell Manufacturing decision.

LARAMORE, Judge, concurring in the opinion of the court also joins in the concurring opinion.

5. Pro: 4 Mertens, Law of Federal Taxation, Sec. 25B.42; Executive Compensation: Deferring Compensation (Excluding Stock Options and Qualified Pension Plans), Twentieth Annual N.Y.U. Institute on Federal Taxation, pp. 405 (1962); 45 Va.L.Rev. 1249 (1959); 13 Vand.L.R. 461 (1960); Con.: 28 Geo.Wash.Univ. L.R. 803 (1960); 58 Mich.L.Rev. 799 (1960).