CROWN COAT FRONT CO., Inc.,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 34, Docket 29710.

United States Court of Appeals
Second Circuit.

Argued Oct. 5, 1965.

Submitted to the in banc court
Dec. 9, 1965.

Decided June 22, 1966.

Certiorari Granted Oct. 10, 1966.
See 87 S.Ct. 87.

Anderson, Kaufman, Hays and Feinberg, Circuit Judges, dissented.

Edwin J. McDermott, Philadelphia, Pa. (Jasper I. Manning, New York City, on the brief), for plaintiff-appellant.

Arthur M. Handler, Asst. U. S. Atty., Southern District of New York (Robert M. Morgenthau, U. S. Atty., and Alan G. Blumberg, Asst. U. S. Atty., Southern District of New York, on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, and WATERMAN, MOORE, FRIENDLY, SMITH, KAUFMAN, HAYS, ANDERSON and FEINBERG, Circuit Judges.

WATERMAN, Circuit Judge (with whom Chief Judge LUMBARD, Judges MOORE and SMITH, and in a separate statement, Judge FRIENDLY, concur. Judge ANDERSON dissents in a separate opinion with whom Judges KAUFMAN, HAYS and FEINBERG concur):

Plaintiff-appellant, on July 31, 1963, commenced its action against the United States in the United States District Court for the Southern District of New York. After the Government answered, pleading

among other things that the action was time-barred, both parties moved for summary judgment. The court below granted the Government's motion and dismissed the complaint on the ground that the complaint had not been filed within six years after plaintiff's cause of action had accrued. 28 U.S.C. § 2401(a). Plaintiff's appeal from the dismissal was heard by a panel of this court composed of Judges Waterman, Hays and Anderson, and while the case was *sub judice* before the panel, the active circuit judges, on December 9, 1965, voted to consider the case *in banc* without further briefs or oral argument. The thrust of appellant's claim on appeal is that it was required fully to exhaust the administrative remedies it had agreed to pursue under the "disputes clause" of its contract before it could institute a suit against the United States, and that, having filed its suit within six years after the final decision in the matter by the Armed Services Board of Contract Appeals, it had therefore filed within six years from the date that its right of action accrued.[1]

The Government, meeting this thrust, briefed its case on the sole issue whether,

"pursuant to 28 U.S.C. § 2401(a), a contractor's 'right of action' against the Government 'first accrues' (i) on the date of the alleged breach of contract by the Government, or (ii) on the date of a decision of the ASBCA denying the contractor's claim."

On May 14, 1956 the appellant entered into a contract with the Government to manufacture and deliver 89,786 felt canteen covers for a total agreed price of $60,691.76. The contract called for the use of mildew-resistant felt, made in accordance with certain established specifications, and provided for the submission of samples to the Government for testing and inspection, prior to manufacture. It also stipulated that if these samples did not meet specifications, the Government had "the right either to reject them or to require their correction." In addition, the agreement included the standard "disputes" clause which required that, in the first instance, "any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided" by the Contracting Officer, from whose decision an appeal could be taken to the Armed Services Board of Contract Appeals (ASBCA).[2]

---

[1]. Appellant's brief sets forth the questions involved as follows:

"1. Where the 'Changes' clause of the contract provides that any failure to agree to a contract price adjustment is a dispute concerning a question of fact within the meaning of the 'Disputes' clause, and the 'Disputes' clause provides a procedure for the settlement of disputes arising under the contract, must not the contractor pursue such administrative remedy and secure a final decision thereof before he may institute suit? Negatived by the Court below.

"2. Where the plaintiff-appellant brings suit within the statutory period of six years after the final decision of the Armed Services Board of Contract Appeals under the 'Disputes' article of the contract, is plaintiff-appellant barred by the statute of limitations? Affirmed by the Court below."

In its reply brief, filed August 27, 1965, appellant reiterated the position that "Since plaintiff-appellant's suit was filed within six years from the date that its

right of action accrued, it was timely," and that it "could not have sued until the decision of the Armed Services Board of Contract Appeals was rendered on February 28, 1963."

[2]. Such a clause is required for most government contracts. See 32 C.F.R. § 7.103–12 and 32 C.F.R. § 596.103–12. The clause in question in this case reads as follows:

"Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. Within 30 days from the date of receipt of such copy, the Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to the Secretary, and the decision of the Secretary or his duly authorized representative for the hearing of such appeals shall, unless determined by a court of competent jurisdiction to have been fraudulent, arbitrary, capri-

In accordance with the contract, appellant submitted four lots of felt samples for testing and inspection. After making laboratory tests in October and November 1956, the Government rejected the samples. Thereupon the appellant requested, and the Government agreed to accept, the delivery of the canteen covers made from the non-conforming felt. A contract modification of $.005 less per unit—a total of $270.01—was agreed upon. Final delivery was made on December 14, 1956, and in all other respects the modified contract was fully performed.

The appellant claims that it was not until nearly five years later that it first learned the Government had improperly tested the samples by submitting them to a different test than contemplated by the contract. On October 4, 1961, appellant's counsel wrote the Contracting Officer and demanded (1) a refund of the $270.01 price adjustment, and (2) an equitable adjustment for alleged increased extra production costs resulting from the initial rejection of the samples. On February 21, 1962, the Contracting Officer filed a decision in which he found that the Government had determined by "an established commercial test method" that the felt samples were nonconforming, and that the price reduction was proper. By opinion dated February 28, 1963, the ASBCA affirmed the Contracting Officer's denial of the claim. On July 31, 1963, five months after the ASBCA decision, but more than six years after the December 14, 1956 final delivery of canteen covers and presentation of the final invoice, appellant brought this suit under the Tucker Act, 28 U.S.C. § 1346(a) (2), demanding the $270.01 and a sum "not exceeding $10,000 as the court may deem just and equitable" as compensation for the alleged extra production costs. As stated above, on cross-motions for summary judgment the district judge dismissed the complaint, holding that it had been time-barred by the six year limit[3] within which Congress had authorized suspension of the Government's sovereign immunity from suit.[4] This appeal followed. We affirm the district court.

cious, or so grossly erroneous as necessarily to imply bad faith, be final and conclusive; provided that, if no such appeal is taken, the decision of the Contracting Officer shall be final and conclusive. In connection with any appeal proceeding under this clause, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of its appeal. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision."

3. Section 1346(a) (2) of Title 28 U.S.Code derives from the so-called Tucker Act, the Act of March 3, 1887, 24 Stat. 505, c. 359, entitled "An act to provide for the bringing of suits against the Government of the United States." It presently reads:
"§ 1346. United States as defendant.
(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:
\* \* \* \* \*
(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."
The Tucker Act was a comprehensive statute and also included among other provisions a predecessor provision to the present 28 U.S.C. § 2401(a), which now reads:
"§ 2401. Time for commencing action against United States.
(a) Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases."

4. We should make mention that the appellant, as a third string to its bow, attempted unsuccessfully to convince the district court that if, despite appellant's arguments otherwise, the six-year period began to run prior to the final administrative order, it began to run at a date later than December 14, 1956, on November 14, 1962. On this date the appellant received a refund from the Government of $646.06

■ At the outset we agree with the finding of the court below that the alleged breach of the contract occurred at the very latest on December 14, 1956. That was the date of the final delivery of the canteen covers found to be nonconforming by the use of a test not contracted for. The right of action against the Government accrued at the time of the breach of the agreement by the Government and not at some later time. This would appear to be settled by McMahon v. United States, 342 U.S. 25, 72 S.Ct. 17, 96 L.Ed. 26 (1951) where the Supreme Court held in a much more appealing case that a seaman's claim for injuries arose when he was injured, and not when his claim had been finally administratively disallowed. The Court specifically rejected both the contention that the seaman could not sue until disallowance and that he had no cause of action until then. As the Court pointed out, even where statutes are to be construed liberally for the benefit of seamen, "it is equally true that statutes which waive immunity of the United States from suit are to be construed strictly in favor of the sovereign," supra at 27, 72 S.Ct. at 19. Hence there the two year period of limitation built into the Suits in Admiralty Act [5] was held to begin to run as of the date of the injury.

Following *McMahon,* and after the passage of the Wunderlich Act, May 11, 1954, c. 199, 68 Stat. 81, 41 U.S.C. §§ 321–322, we, in States Marine Corp. of Del. v. United States, 283 F.2d 776 (2 Cir. 1960) ruled against a libelant who claimed that the Government in December 1954 had breached a contract with it. We so ruled because the plaintiff's libel had not been filed until September 1957, even though during 15 months of the elapsed 33 months the contractor's claim had been under consideration, first

by the Contracting Officer and then by the ASBCA, pursuant to a "Disputes" clause in the contract like the "Disputes" clause in appellant's contract.[6]

In fact, in *States Marine* we disposed of every claim appellant makes here. We held that the contractor should not await final decision of the ASBCA, in accord with his agreement to submit disputes to the agency officers, before commencing a protective suit, and that the time-bar period did not begin to run from the time of the final decision of the ASBCA, but, as the right of action accrued at the time of the breach, the time-bar began to run then. Moreover, we held, supra at 779, that the running of the time-bar was not tolled during the period when the claim was under administrative consideration.

Unless a reason exists for differently treating a suit brought pursuant to the permission granted by the Tucker Act from a suit brought pursuant to the permission granted by the Suits in Admiralty Act, we would be required to overrule the law of this circuit laid down in States Marine and reaffirmed in Isthmian S. S. Co. v. United States, 302 F.2d 69 (2 Cir. 1962) if we were to grant relief to the appellant here.

After final briefs had been filed by the parties the Third Circuit handed down its opinion in Northern Metal Co. v. United States, 350 F.2d 833 (3 Cir. 1965). In that case *McMahon* was followed as to the fixing of the time when the two-year time-bar began to run, but, in direct conflict with the opinion of our court in States Marine Corp. of Del. v. United States, supra, and the decisions following it (including the district court opinion appealed from in Northern Metal Co. v. United States, 230 F.Supp. 38 (E.D.Pa. 1964)) the Third Circuit held that the running of this time-bar was tolled dur-

---

which the ASBCA had determined in a different proceeding had been erroneously deducted as prompt payment discounts the Government should not have withheld. As will appear from our later discussion herein we agree with the district court that there is no merit to this contention.

5. Section 5 of the Suits in Admiralty Act, March 9, 1920, c. 95, 41 Stat. 525; 46 U.S.C. § 745.

6. See footnote 2, supra, and footnote 1 in States Marine Corp. of Del. v. United States, supra at 777.

ing the pendency of the administrative proceedings. The issue of such a possible tolling of the Tucker Act's six-year time-bar had not been comprehended within the thrust of appellant's contentions, see footnote 1; and that fact, together with the square conflict of the two circuits relative to the tolling of the Suits in Admiralty Act's two-year time-bar, caused the panel *sua sponte* to refer adjudication of the case to all the active judges.[7]

Though the more recent Suits in Admiralty Act appears in the U. S. Code, section for section, much as it was when adopted in 1920, and the various provisions, section for section, of the eighty-year old Tucker Act are split up, here and there, in Title 28 of the Code, both Acts of Congress are grants of rights to sue the Government, which, being the sovereign, has full immunity from standing any suit at all. As such, both Acts set forth the kinds of claims that may be brought, the courts within which these specified claims are to be litigated, and the length of time within which these specified claims may be presented after the causes of action arose, or accrued. These built-in limitations upon a more complete waiver of sovereign immunity spell out the ambit within which a would-be litigant seeking recovery from the sovereign must operate; in short, unless the would-be litigant operates within the area of the statutory grant, he is outside the jurisdiction the sovereign granted him, whether his cause of action is an impermissible one, he is in the wrong forum, or his time in which to act has expired.

Of the time-bar condition, we said in *States Marine:*

"The two year time-bar of the Suits in Admiralty Act is unlike a time-bar period prescribed under an ordinary Statute of Limitations. Under an ordinary time-bar statute a claim is not extinguished after the statutory period

has elapsed. It is only unenforceable. The time-bar of the Suits in Admiralty Act renders a claim against the United States not only unenforceable, but extinguishes the claim itself, for when the sovereign, immune from suit, consented to be sued it was made a condition of the right to sue that suits so authorized had to be brought within the time-bar period. McMahon v. United States, supra [342 U.S. 25, 72 S.Ct. 17, 96 L.Ed. 26 (1951)]; Sgambati v. United States, supra [172 F.2d 297, 298, cert. denied, 337 U.S. 938, 69 S.Ct. 1514, 93 L.Ed. 1743 (1949)].

"It therefore follows that despite any maritime contractual agreements that parties may enter into with the United States such contractual agreements may not extend the time-bar period of two years prescribed by Section 5 of the Suits in Admiralty Act within which suit against the United States may be commenced. United States v. Wessel, Duval & Co., D.C.S.D.N.Y.1953, 115 F.Supp. 678. Accord, Atlantic Carriers, Inc. v. United States, D.C.S.D.N.Y.1955, 131 F.Supp. 1. Jurisdiction to hear a case brought at a later date than two years after the cause of action arose cannot be awarded to the court by agreement." 283 F.2d 776, 778.

What we said in *States Marine* about the time-bar of the Suits in Admiralty Act applies to the time-bar of the Tucker Act. A Tucker Act claim is extinguished when the limiting time expires. The claim being extinguished, the court's jurisdiction is gone, and jurisdiction to adjudicate the claim cannot be conferred upon the court by any agreement.

Prior to the passage of the Tucker Act in 1887, a suit could be brought against the United States in the Court of Claims provided it was brought within six years after the right to suit had accrued. The

7. Appellant's action was commenced seven and one-half months after the six year jurisdictional limitation began to run, but if the time when administrative proceedings were pending is to be excluded from computation, the action was not time-barred.

Tucker Act, adopted March 3, 1887, awarded a claimant whose claim against the Government was for a sum under $10,000 the right to present his claim to a specified United States District Court or Circuit Court "*Provided,* That no suit against the Government of the United States, shall be allowed under this act unless the same shall have been brought within six years after the right accrued for which the claim is made." The provision of the Tucker Act granting grace to suitors to sue in a district court is now found in 28 U.S.C. § 1346(a) (2); the time-bar limitation is now found, since the 1948 edition of the Judicial Code, in 28 U.S.C. § 2401(a). These two subsections, each derived from the Tucker Act, should be read in connection with each other, Section 2401(a) jurisdictionally limiting the exercise of the right to sue which the sovereign granted under 28 U.S.C. § 1346(a).

In October 1887, the same year that the Tucker Act was adopted, in deciding an appeal to the U.S. Supreme Court from a decision of the Court of Claims, Justice Harlan stated in Finn v. United States, 123 U.S. 227, 232–233, 8 S.Ct. 82, 85, 31 L.Ed. 128, with reference to the permissive six-year period then, and now, applicable to that Court, the following:

> The general rule that limitation does not operate by its own force as a bar, but is a defence, and that the party making such a defence must plead the statute if he wishes the benefit of its provisions, has no application to suits in the Court of Claims against the United States. An individual may waive such a defence, either expressly or by failing to plead the statute; but the government has not expressly or by implication conferred authority upon any of its officers to waive the limitation imposed by statute upon suits against the United States in the Court of Claims. Since the government is not liable to be sued, as of right, by any claimant, and since it has assented to a judgment being rendered against it only in certain classes of cases, brought within a prescribed period aft-

er the cause of action accrued, a judgment in the Court of Claims for the amount of a claim which the record or evidence shows to be barred by the statute would be erroneous.

In United States v. Greathouse, 166 U.S. 601, 17 S.Ct. 701, 41 L.Ed. 1130 (1897) the Tucker Act was construed, again by Mr. Justice Harlan. Finn v. United States was cited and followed. The Court held:

> We may add that it was not contemplated that the *limitation* upon suits against the Government in the District and Circuit Courts of the United States should be different from that applicable to like suits in the Court of Claims. 166 U.S. at 606, 17 S.Ct. at 703. (Emphasis supplied.)

Shortly thereafter, in United States v. Wardwell, 172 U.S. 48, 19 S.Ct. 86, 43 L.Ed. 360 (1898) the matter has been laid to rest in the Supreme Court for seventy years. Mr. Justice Brewer, beginning the opinion for the unanimous Court in that case stated, p. 52, 19 S.Ct. p. 88:

> Section 1069, Rev.St., is not merely a statute of limitations, but also jurisdictional in its nature, and limiting the cases of which the Court of Claims can take cognizance. Finn v. United States, 123 U.S. 227 [8 S.Ct. 82, 31 L. Ed. 128].

This "jurisdictional" interpretation of the six-year time-bar has never been overruled by the United States Supreme Court. And the Court, consistent with this interpretation, has rejected the contention that the jurisdictional time-bar should not begin to run until after an administrative denial of a claimant's claim when that contention has been advanced on the theory that there is no ground for a suit in court until all administrative remedies have been exhausted. Soriano v. United States, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957).

Appellant states in his complaint that the decision of the Armed Services Board of Contract Appeals "is not entitled to

finality under 68 Stat. 81, 41 U.S.C. §§ 321–322 for the reasons that it was capricious, arbitrary and not supported by substantial evidence * * *." Apparently this reference to the so-called "Wunderlich" Act of 1954 was intended to nip in the bud any government defense that this ASBCA decision was a final disposition of plaintiff's claims. Of course this reference in its complaint brought pursuant to 28 U.S.C. § 1346(a) (2) is not construable as pleading a separate right to review that administrative result, and, too, as we have above stated, the fact of this decision has no bearing upon the accrual of plaintiff's right to sue. Soriano v. United States, supra; McMahon v. United States, supra; States Marine Corp. of Del. v. United States, supra; Northern Metal Co. v. United States, supra, 350 F.2d at 836.

Even as we cannot accept February 28, 1963 as the date when appellant's claim accrued we also cannot accept November 14, 1962 as the date of accrual, the date the Government refunded the erroneously withheld prompt payment discounts. A refunding adjustment made years after the final delivery of goods and the submission of a voucher for payment of those goods is not a "final voucher" submitted by the contractor, and, as pointed out by the court below, appellant's right to sue accrued when its work was completed and its final voucher was submitted. See B-W Construction Company v. United States, 100 Ct.Cl. 227 (1943); Austin Engineering Co. v. United States, 88 Ct.Cl. 559; Acorn Decorating Corporation v. United States, 174 F.Supp. 949, 146 Ct.Cl. 394 (1959). As was said by the Court of Claims in Pink v. United States, 85 Ct.Cl. 121, cert. denied, 303 U.S. 642, 58 S.Ct. 641, 82 L.Ed. 1102 (1938):

> * * * It has been repeatedly held by this court that under a contract to perform work, the completion and acceptance date starts the statute to run. It is the completion of the service called for under the contract, and not the date of any payment subsequently made.

Finally, it is clear that when Congress passed the Wunderlich Act that body did not intend to grant any new period of permissive delay within which the built-in six-year time-bar of the Tucker Act might be tolled. The House Committee Report is explicit on the point and demonstrates that Congress was fully aware of the established law and did not intend to affect it. H.R.Rep.No. 1380, 83d Cong., 2d Sess. (1954), 2 U.S.Code & Ad.News, pp. 2191, 2196 (1954), see Cosmopolitan Mfg. Co. v. United States, 297 F.2d 546, 549, 156 Ct.Cl. 142, cert. denied, sub nom. Arlene Coats v. United States, 371 U.S. 818, 83 S.Ct. 36, 9 L.Ed. 2d 60 (1962).

In view of the foregoing, we reiterate what we said in States Marine Corp. of Del. v. United States, supra, 283 F.2d at 779, and hold here that inasmuch as the six-year limitation is a restriction upon the jurisdiction of the district court, the running of the six-year time-bar could not be extended by the Disputes Clause agreement of the parties, or tolled during the period that appellant's claim was being administratively considered.

In general, see United States v. Utah Construction and Mining Co., 86 S.Ct. 1545 (June 6, 1966) and United States v. Carlo Bianchi & Co., 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963), if a claimant is uncertain whether he should proceed at once with a Tucker Act suit or first submit a dispute, pursuant to his agreement, to the ASBCA, he may always protect himself by instituting a "protective suit" within the six-year period permitted by the Tucker Act, staying its progress until after a final administrative decision, and then bringing it forward if the administrative decision is adverse to him.

The judgment below is affirmed.

FRIENDLY, Circuit Judge (concurring):

If the issue here were now arising in this court for the first time, I might well be persuaded to the position

taken by Judge Freedman in Northern Metal Co. v. United States, 350 F.2d 833 (3 Cir. 1965) and by my brother Anderson in dissent, rather than to that which we adopted in States Marine Corp. of Del. v. United States, 283 F.2d 776 (2 Cir. 1960). But the issue is a close one on any view, there is much to be said for *States Marine*, and it derives considerable support from the language of Soriano v. United States, 352 U.S. 270, 274–275, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957). That we are sitting *in banc* does not relieve us of the judicial obligation to pay proper heed to precedent; the question still is "not what we would hold if we now took a fresh look but whether we should take that fresh look," Mississippi River Fuel Corp. v. United States, 314 F.2d 953, 958, 161 Ct.Cl. 237 (1963) (concurring opinion of Davis, J.). Judge Davis' illuminating opinion identifies several factors that may justify this; when none of these exists, "respect for an existing precedent is counselled by all those many facets of stability-plus-economy which are embodied in the principle of *stare decisis*." The only thing in the picture now that was not before the *States Marine* panel six years ago is the Third Circuit's opinion in *Northern Metal;* valuable as that is, it can hardly be rated, to use Judge Davis' phrase, as "an intervening development in the law, or in critical comment, which unlocks new corridors." What it does do is to provide a ready handle for opening the door to correction, if we are wrong, by the only tribunal that can settle the issue once and for all. Supreme Court Rule 19.

ANDERSON, Circuit Judge, with whom Judges KAUFMAN, HAYS, and FEINBERG concur (dissenting):

■ I dissent. I do, however, agree with the majority that the period of limitations began to run on the date of the alleged breach of the contract. The claim for breach accrued at the latest on De-cember 14, 1956, the date of the final delivery, which was more than six years prior to the commencement of this action. The Supreme Court decided in McMahon v. United States, 342 U.S. 25, 72 S.Ct. 17, 96 L.Ed. 26 (1951) that a seaman's claim for injuries accrued at the date of the injury, and not at the date when his claim was rejected by administrative officers.[1] A similar result has been reached in our own circuit in States Marine Corporation of Delaware v. United States, 283 F.2d 776, 778 (2d Cir. 1960), and more recently by the Third Circuit in Northern Metal Co. v. United States, 350 F.2d 833 (3d Cir. 1965).

I am of the opinion, however, that the decision below should be reversed because the limitations period was tolled during the pendency of the administrative proceedings required by the disputes clause.

As the Supreme Court stated in Burnett v. New York Cent. R. Co., 380 U.S. 424, at 426, 85 S.Ct. 1050, at 1053, 13 L.Ed.2d 941 (1965),

"The basic question to be answered in determining whether, under a given set of facts, a statute of limitations is to be tolled, is one 'of legislative intent whether the right shall be enforceable * * * after the prescribed time.'"

The Court went on to say at 427, 85 S.Ct. at 1054,

"In order to determine congressional intent, we must examine the purposes and policies underlying the limitation provision, the Act itself, and the remedial scheme developed for the enforcement of the rights given by the Act."

The statutes of limitations are statutes of repose, designed to put an end to litigation.

"The primary consideration underlying such legislation is undoubtedly one of fairness to the defendant. There comes a time when he ought to be secure in his reasonable expectation that the slate has been wiped clean of

---

1. In McMahon the Supreme Court left open the question of whether the statutory period there in question had been tolled, since a decision on that point would not have affected the result. 342 U.S. at 28, 72 S.Ct. at 19.

ancient obligations, and he ought not to be called on to resist a claim when 'evidence has been lost, memories have faded, and witnesses have disappeared.'" Note, 63 Harv.L.Rev. 1177, at 1185 (1950).

See Order of Railroad Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, at 348–349, 64 S.Ct. 582, at 586, 88 L.Ed. 788 (1944).

> "This policy of repose, designed to protect defendants, is frequently outweighed, however, where the interests of justice require vindication of the plaintiff's rights."

Burnett v. New York Cent. R. Co., supra, 380 U.S. at 428, 85 S.Ct. at 1055. Thus courts have engrafted numerous exceptions upon statutory periods of limitations. See, e. g., Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); Bailey v. Glover, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1874). The otherwise mechanical results, to which the unbated application of the limitations periods would lead, have thus been mitigated by familiar principles such as the one that a period of limitations is tolled until fraud is discovered. Bailey v. Glover, supra. Similarly it is accepted that,

> "Where the plaintiff is prevented from finding timely suit by force of law, it is manifestly unjust to penalize him by barring the suit." 63 Harv.L.Rev. at 1233.

And in Urie v. Thompson, supra, the Supreme Court recognized that a claim for an injury caused by a slow and continuing process was not barred if brought within three years of *discovery* of the ailment. Finally, in other instances it is recognized that the principles of estoppel may prevent a defendant from raising the defense of the statute of limitations, "when his representations or conduct have induced the plaintiff to forbear from prosecuting his known cause of action, and the limitations period has expired while the plaintiff continues to forbear." 63 Harv.L.Rev. at 1222. The application of these principles should not depend upon whether the statute of limitations involved is one which may be characterized as "substantive" or "procedural." Nor does the fact that a newly created right of action sprang from a waiver of sovereign immunity render the statute of limitations impervious to the application of those same mitigating considerations. In every case inquiry should be directed to the basic question of "legislative intent." Burnett v. New York Cent. R. Co., supra. By making the administrative proceedings a mandatory prerequisite to the seeking of relief in such cases from the courts, Congress did not intend that the statute of limitations would run during the pendency of those administrative hearings and deliberations.

Looking to the scheme of the Tucker Act, 28 U.S.C. § 1346(a) (2) (1964 ed.), and the liberal purpose which it evinces to permit suits based upon contract claims to be brought against the Government, it would be anomalous to hold that the Government, through its power to make regulations, could require the inclusion in all of its thousands of procurement contracts of a mandatory provision that claims must first be processed through its administrative channels, and, by proceedings long drawn out, effectively defeat the rights of claimants to present their claims to a court of law. There is, of course, no doubt that the appellant was required first to proceed with, and exhaust, its administrative remedies before it could sue under the Tucker Act. See, e. g., United States v. Joseph A. Holpuch Co., 328 U.S. 234, 66 S.Ct. 1000, 90 L.Ed. 1192 (1946); and Northern Metal Co. v. United States, supra, 350 F.2d at 839, which says,

> "Since the Government through its contracting officer and the Armed Services Board of Contract Appeals not only was aware of the claim but was engaged in deciding its merits, it would be harsh and out of harmony with the purpose and intention of Congress to hold that the statutory time ran during the pendency of the administrative proceedings."

In this kind of case many of the factors which usually provide the basis for the rationale of the limitations periods are absent. By bringing its claim to the contracting officer within six years of its accrual, the appellant effectively gave the Government all the notice to which it was entitled. The administrative proceedings which were held had the effect of recording and preserving all of the relevant evidence. There is, therefore, none of the dangers against which the time bars are designed to protect. The Government is not being called upon to defend a claim after "evidence has been lost, memories have faded, and the witnesses have disappeared." Order of Railroad Telegraphers v. Railway Express Agency, Inc., supra, 321 U.S. at 349, 64 S.Ct. at 586. Indeed, prejudice will result only if the suit is not permitted, in the event of which the party to suffer will be the plaintiff. It is my opinion that States Marine Corporation of Delaware v. United States, 283 F.2d 776 (2d Cir. 1960), which in cases of this kind operates harshly and unjustly, should be overruled.

I do not believe that the contractor's ability to bring a protective suit is a satisfactory solution to the problem. Such a procedure would inevitably lead to the defeat of many legitimate claims in the cases of claimants who are unaware of the need for bringing such protective actions. Furthermore, it would have the unfortunate effect of increasing the burden of the district courts by causing still more crowding of already crowded dockets with lawsuits which will languish for years during the pendency of administrative proceedings, and which in all probability will never come up for trial. Therefore, as a matter of sound judicial administration the requirement that a protective suit be commenced within the period of limitations has little to commend it.

The statutory period of limitations (28 U.S.C. § 2401(a) (1964 ed.)), which is applicable to the Tucker Act, should be held to be tolled during the pendency of the administrative proceedings required by the "disputes" clause.[2] This does not mean that a contractor may indefinitely put off the time of suit. "On the contrary, the time would run during the contractor's delay in presenting the dispute and would be tolled only during its pendency before the contracting officer and the Armed Services Board of Contract Appeals, a period which is in the control of the Government's employees and not of the contractor." Northern Metal Co. v. United States, supra, 350 F.2d at 839. Because the appellant commenced its administrative petition within the six year period and because its suit, if allowance be made for a tolling of the statute during the administrative proceedings, was brought within the statutory period, the present action was timely brought. " * * * [P]laintiff has not slept on his rights but, rather, has been prevented from asserting them." Burnett v. New York Cent. R. Co., supra, 380 U.S. at 429, 85 S.Ct. at 1055.

2. Cf. Carnation Co. v. Pacific Westbound Conference, 383 U.S. 213, 86 S.Ct. 781, 15 L.Ed.2d 709, 851 (1966), where, in another context, the Supreme Court, in a dictum stating that it was error to dismiss an action which the Court of Appeals had decided should have been presented first to an administrative tribunal, noted that:
"Such claims are subject to the Statute of Limitations and are likely to be barred by the time that the * * * [administrative agency] acts. Therefore, we believe that the Court of Appeals should have stayed the action instead of dismissing it." 383 U.S. at 223, 86 S.Ct. at 787.
While the subject matter in Carnation is certainly different from the one which is now before our court, nevertheless the same considerations apply and dictate that the Statute of Limitations should be tolled during the pendency of the administrative proceedings before the ASBCA.