**CROWN COAT FRONT CO., Inc.,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

No. 63 Civ. 2281.

United States District Court
S. D. New York.

Sept. 20, 1967.

---

course of its business as a common carrier.

4. Ibid.

Charles J. Nager, New York City, for plaintiff.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, for United States, by Alan G. Blumberg, Asst. U. S. Atty., New York City.

MANSFIELD, District Judge.

Plaintiff has moved to amend its complaint to state a claim for breach of contract in the amount of $19,556.03 and to transfer the case, over which this Court would no longer have jurisdiction, to the Court of Claims pursuant to 28 U.S.C. § 1406(c).[1] The parties have requested that this Court also determine whether the claim is barred by the statute of limitations.

This time-worn and weary case arises out of a May 14, 1956 contract between the plaintiff and the Government whereby the plaintiff was to manufacture 89,-786 felt canteen covers and deliver them to the Government for a price of $60,691.-76. Under the contract it was the Government's prerogative to test the covers for mildew resistance and to reject them if they did not meet specifications. The Government made such tests in October and November, 1956, found that the covers did not meet the specified standards with respect to mildew, but ultimately accepted the goods after agreeing to a reduction of $270.01 from the contract price.

Plaintiff claims that it did not discover until March 20, 1959 that the Government had tested the samples by a method different from that which had been contemplated under the contract. No action appears to have been taken thereafter by the plaintiff, however, for the next two and one-half years.

On October 4, 1961, acting pursuant to the "standard disputes" clause [2] in the contract which provided that "any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided" by the Contracting Officer whose decision could be appealed to the Armed Services Board of Contract Appeals ("Board" herein), plaintiff's counsel wrote the Contracting Officer demanding a refund of the $270.01 adjustment and an equitable adjustment with respect to plaintiff's increased production costs which resulted from the initial wrongful rejection of

1. 28 U.S.C. § 1406(c) provides in pertinent part:

"If a case within the exclusive jurisdiction of the Court of Claims is filed in a district court, the district court shall, if it be in the interest of justice, transfer such case to the Court of Claims, where the case shall proceed as if had been filed in the Court of Claims on the date it was filed in the district court."

2. The clause provided:

"Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. Within 30 days from the date of receipt of such copy, the Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to the Secretary, and the decision by the Secretary or his duly authorized representative for the hearing of such appeals shall unless determined by a court of competent jurisdiction to have been fraudulent, arbitrary, capricious or so grossly erroneous as necessarily to imply bad faith, be final and conclusive; provided that, if no such appeal is taken, the decision of the Contracting Officer shall be final and conclusive. In connection with any appeal proceeding under this clause, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of its appeal. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision."

the samples. The claim was made under the "Changes" clause of the contract which provided that "an equitable adjustment would be made in the contract price or delivery schedule" if the Contracting Officer should make changes within the scope of the contract and that failure to agree on such an adjustment would give rise to a question of fact within the meaning of the "disputes" clause.[3] On February 21, 1962, the Contracting Officer filed his decision finding that the test methods employed by the Government had been entirely appropriate. The Board affirmed the Contracting Officer's denial of the claim on February 28, 1963.

On July 31, 1963 plaintiff brought this suit to review the Board's decision under the Tucker Act (28 U.S.C. § 1346(a) (2))[4] seeking a return of the $270.01 and damages not exceeding $10,000 which represented plaintiff's increased production costs resulting from the initial re-

jection of the goods. The complaint alleged that the Government's performance of the tests of the canteen covers for mildew constituted a "change in contract specifications" (Par. 10) entitling the plaintiff to an upward price adjustment under the contract's "Changes" clause; and that the Board's contrary decision of February 28, 1963 was not entitled to finality for the reason that it was "capricious, arbitrary and not supported by substantial evidence, and concerned questions of law", entitling the plaintiff "to an equitable adjustment of the contract price". On February 2, 1965 the district court dismissed plaintiff's claim as barred by the six-year statute of limitations applicable to actions against the United States.[5] The Court of Appeals affirmed *en banc* 363 F.2d 407, and the Supreme Court reversed on the ground that if the claim was one "arising under the contract" the right of action did not accrue

3. While the record does not indicate the specific provisions of the "Changes" clause, the standard clause provides:

"The Contracting Officer may at any time, by a written order, and without notice to the sureties, make changes, within the general scope of this contract, in any one or more of the following: (i) Drawings, designs, or specifications, where the supplies to be furnished are to be specially manufactured for the Government in accordance therewith; (ii) method of shipment or packing; and (iii) place of delivery. If any such change causes an increase or decrease in the cost of, or the time required for the performance of any part of the work under this contract, whether changed or not changed by any such order, an equitable adjustment shall be made in the contract price or delivery schedule, or both, and the contract shall be modified in writing accordingly. Any claim by the Contractor for adjustment under this clause must be asserted within 30 days from the date of receipt by the Contractor of the notification of change, provided, however, that the Contracting Officer, if he decides that the facts justify such action, may receive and act upon any such claim asserted at any time prior to final payment under this contract. Where the cost of property made obsolete or excess as result of a change is included in the Contractor's claim for adjustment, the Con-

tracting Officer shall have the right to prescribe the manner of disposition of such property. Failure to agree to any adjustment shall be a dispute concerning a question of fact within the meaning of the clause of this contract entitled 'Disputes.' However, nothing in this clause shall excuse the Contractor from proceeding with the contract as changed." 32 C.F.R. § 7.103–2.

4. 28 U.S.C. § 1346(a) (2) provides that the district courts shall have original jurisdiction, concurrent with the Court of Claims of:

"Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated damages or unliquidated damages in cases not sounding in tort."

5. 28 U.S.C. § 2401 provides:

"(a) Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases."

until the Board finally ruled on the claim. 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256. In view of the fact that the Government denied that the claim was one "arising under" the contract and contended that it was a "pure breach of contract claim which accrued not later than the date of the contract", the Supreme Court remanded the case to the district court for determination of that issue with the advice that "If the claim is not within the disputes clause, the court may then determine whether it is time-barred."

During the pendency of the foregoing proceedings the plaintiff on December 12, 1962, commenced a suit in the Court of Claims for breach of the contract, praying for $25,000 damages. On September 29, 1963, the Court of Claims action was dismissed without prejudice due to the pendency of the present case.

After having obtained a favorable decision from the Supreme Court on the basis of its contention that its claim in the present suit was one "arising under" the contract, plaintiff now for the first time states that it "accepts the Government's viewpoint that the claim asserted by plaintiff herein is a pure breach of contract" (P. 1, "Memorandum of Points and Authorities" submitted August 1, 1967) [6] and asks leave to amend the complaint to assert a simple breach of contract claim for damages in the sum of $19,556.03, instead of its claim based on the alleged arbitrary action of the Board in denying its claim for equitable adjustment under the "Changes" and "Disputes" clauses of the contract.

■ Insofar as plaintiff seeks to amend the complaint to increase the *ad damnum* to $19,556.03 and to have the case transferred to the Court of Claims on the ground that this Court would thereby oust itself of jurisdiction, 28 U.S.C. § 1346(a) (2) and Luria Bros. & Co. v. United States, 369 F.2d 701, 177 Ct. Cl. 676, (1966), such relief does not appear to be in the interest of justice. See Rule 15(a), F.R.Civ.P. and 28 U.S.C. § 1406(c). There is no showing that the increased damages were not known when the action was begun in July 1963 or that they could not have been asserted either under the "Changes" clause of the contract, in which event the case might have been transferred to the Court of Claims long before the extensive proceedings herein, or joined with the "disputes" claim as alternative claims in an action in the Court of Claims. This is not a case of inadvertent error but one where suit was deliberately brought in this forum with full knowledge of its jurisdictional limitations instead of exercising its right to join two alternate theories ("breach" and "disputes clause") in one suit in the Court of Claims, where the plaintiff now seeks a transfer for a procedural or tactical advantage,[7] after having invoked the facilities of the federal courts all the way to the Supreme

---

6. See also "Plaintiff's Reply Memorandum of Law re Statute of Limitations" which bears as POINT I heading "Plaintiff's Claim is for a breach of contract" and states (p. 7) "The parties have agreed that plaintiff's claim is for breach" and (p. 8) "The parties now agree that the issue before the Court arose from breach of contract and not as a claim 'arising under' the Changes article of the contract."

7. The tactical advantage would apparently lie in the fact (noted below) that the Second Circuit in this case has held that any "breach" claim accrued on December 14, 1956, 363 F.2d 407, 410, whereas the Court of Claims has indicated in another case, Nager Electric Co. v. United States, 368 F.2d 847, 857, 177 Ct.Cl. 234,

that where a "disputes" clause claim and "breach" claim arise out of a single contract, the time bar does not start running as to either until the termination of the administrative process. The present case, however, is not one where the plaintiff has joined two claims arising out of the same facts, i. e., one under the "disputes" clause and the other for "breach", contending that the time bar was tolled as to the breach claim pending exhaustion of the administrative process with respect to the "disputes" clause claim. Plaintiff here concedes that its sole claim is one for "pure breach of contract" and offers other arguments (noted below) in support of its contention that the claim is not time-barred.

Court, at no little time and expense to the Government. After such a tour de force the additional claim appears frivolous, and further shuttling back and forth between this Court and the Court of Claims is unjustified. Accordingly the motion to amend is denied.

■ Since both sides agree that the claim is one for breach of contract and have asked this Court to rule on the question of whether it is time-barred, as suggested by the Supreme Court, this Court has considered the question and concludes that the claim is barred by the six-year statute of limitations. 28 U.S.C. § 2401, supra, note 5.

■ Upon oral argument both sides took the position that plaintiff's cause of action for breach of contract accrued on December 14, 1956, which was more than six years prior to plaintiff's institution of the present lawsuit on July 31, 1963.[8] Plaintiff asserts, however, that the six-year statute of limitations was tolled on December 12, 1962, when it filed its suit for $25,000 damages in the Court of Claims, which was still pending when the plaintiff filed its suit here. Plaintiff relies heavily on Burnett v. New York Cent. R.R., 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965), which held that the statute of limitations was tolled for the duration of a state court FELA suit in Ohio that was dismissed for improper venue. It also refers us to such other cases rejecting the defense of the statute of limitations as Minnesota Mining & Mfg. Co. v. New Jersey Wood Finishing Co., 381 U.S. 311, 85 S.Ct. 1473, 14 L.Ed.2d 405 (1965); Berry v. Pacific Sportfishing, Inc., 372 F.2d 213 (9th Cir. 1967); United States v. Woodbury, 359 F.2d 370 (9th Cir. 1966); Izquierdo v. Cities Serv. Oil Co., 244 F.Supp. 758 (S.D.N.Y.1965). Aside from the distinguishing factor of the Supreme Court's emphasis on the humanitarian purpose of the FELA, plaintiff's reliance

on *Burnett* is misplaced because the present suit is against the United States, not a private person. See Kendall v. United States, 107 U.S. 123, 2 S.Ct. 277, 12 L.Ed. 437 (1882). Since the United States possesses sovereign immunity, it may be sued only under such conditions as Congress specifically permits. Indeed, the terms of the Congressional consent delimit the Court's jurisdiction to entertain the suit. United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Limitations and conditions upon this consent must be strictly observed and exceptions are not to be implied. Soriano v. United States, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957). For example, generally the running of a statute of limitations provides a defense but does not extinguish the claim, which may be revived with the defendant's consent. In marked contrast the rule regarding limitations of actions against the United States is that the statute is jurisdictional and that the running of the prescribed time period extinguishes the claim, which cannot thereafter be revived or waived. See Finn v. United States, 123 U.S. 227, 8 S.Ct. 82, 31 L.Ed. 128 (1887). Commencement of an action against the Government that is later dismissed without prejudice as improperly brought does not, therefore, toll the statute of limitations. The language of such cases as Goldlawhr, Inc. v. Heiman, 369 U.S. 463, 466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962), reveals a clear assumption that such is the law. See, e. g., Callan v. Lillybelle, Ltd., 39 F.R.D. 600 (S.D.N.Y. 1966); and Sen.Rep.1894, 86th Cong., 2d Sess., 1960 U.S.Code, Cong. & Ad. News 3583.

■ After the plaintiff, upon argument of the motion, was faced with the foregoing answer to its "tolling" claim, its counsel, with the Court's permission, filed an additional memorandum contending that the Government concealed from it the test method it used and that

---

8. This was the conclusion of the Court of Appeals, which stated in its *en banc* decision, 363 F.2d 407 at 410, "At the outset we agree with the finding of the court below that the alleged *breach* of the contract occurred at the very latest on December 14, 1956," and is binding on this Court. (Emphasis supplied)

**16**

the cause of action did not accrue until March 20, 1959, when the Government informed the plaintiff of the details of the test, which would render it timely within the meaning of 28 U.S.C. § 2401. Plaintiff has nowhere alleged, however, that any fraudulent intent was involved on the part of the Government and, indeed, it would seem that there was none. There is no suggestion that the Government, prior to the time the statute of limitations would normally have run, was unwilling to inform plaintiff of the type of test that had been used. Thus, plaintiff has not set forth the essential facts required to be alleged in cases of this sort. There is a sharp distinction between "fraudulent concealment" and failure to ascertain the existence of a cause of action through exercise of due diligence. When Congress wishes the latter to postpone the running of a statute of limitations, it says so (Atlantic City Elec. Co. v. General Elec. Co., 312 F.2d 236 (2d Cir.), cert. denied, 373 U.S. 909, 83 S.Ct. 1298, 10 L.Ed.2d 411 (1963)). The general rule is that lack of knowledge of the existence of a cause of action, or of facts giving rise thereto, will not suspend its accrual for the purposes of the statute of limitations. Thomas v. United States, 125 Ct.Cl. 76 (1953); see Navajo Freight Lines v. United States, 176 Ct. Cl. 1265 (1966). But even if we indulge in some flexibility and apply a standard of reasonableness in determining the date when a plaintiff should, with the exercise of due diligence, have discovered the existence of the cause of action, see Kossick v. United States, 330 F.2d 933, 7 A.L.R. 3d 726 (2d Cir. 1964), no basis exists for postponing the accrual beyond that date. Japanese War Notes Claim Assn. etc. v. United States, 373 F.2d 356, 178 Ct.Cl. 630 (1967). Here plaintiff has never contended that reasonable diligence would not have revealed the test method long prior to July 31, 1957, which was six years before commencement of the action. Indeed, due diligence would have led the plaintiff to inquire into the test method in 1956, when the Government rejected the samples on the ground that they did not contain the contract quantities of mildew inhibitors. Plaintiff offers no reason for not having done so at that time.

Accordingly, the motion to amend the complaint is denied and the complaint is dismissed as time-barred.

So ordered.