**CROWN COAT FRONT CO., Inc.,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**No. 317, Docket 31915.**

United States Court of Appeals
Second Circuit.

Argued Feb. 7, 1968.

Decided May 14, 1968.

Edwin J. McDermott, Philadelphia, Pa. (Charles J. Nager, New York City, on the brief), for plaintiff-appellant.

Alan G. Blumberg, Asst. U. S. Atty., (Robert M. Morgenthau, U. S. Atty. for the Southern Dist. of New York, Lawrence W. Schilling, Asst. U. S. Atty., on the brief), for defendant-appellee.

Before WATERMAN and FEINBERG, Circuit Judges, and BARTELS, District Judge.*

FEINBERG, Circuit Judge:

In 1956, the amount due plaintiff Crown Coat Front Co., Inc. on a contract with defendant United States was reduced by the sum of $270.01 out of a total contract price exceeding $60,000. This minor price adjustment, incredibly, has led to years of still unfinished litigation before the Armed Services Board of Contract Appeals, the United States District Court for the Southern District of New York, this court in banc, and the United States Supreme Court.[1] And now, in the latest phase of its dogged pursuit of its remedies, Crown Coat again appeals from a judgment of the United States District Court for the Southern District of New York, Walter R. Mansfield, J., dismissing as time-barred its complaint for damages against defendant United States. For reasons set forth below, we affirm.

■■ As a prelude to further discussion of this appeal, three factors must be stressed. First, a contractor suing the Government must ordinarily do so within six years from the date his right of action accrues. Second, there is a conceptual difference between so-called "disputes clause" claims and "breach" claims growing out of a contract with the Government. Although it is frequently difficult to tell into which category a specific claim falls,[2] at least this much can be said: "Disputes clause" claims are "redressable under specific contract adjustment provisions" and therefore subject to the disputes procedure set forth in the contract; "breach" claims are not. United States v. Utah Constr. & Mining Co., 384 U.S. 394, 404 n. 6, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). Third, the prior opinion of this court sitting in banc, Crown Coat Front Co. v. United States, 363 F.2d 407 (1966), still retains significance on certain issues decided therein even though it was reversed on other grounds.

---

* Of the Eastern District of New York, sitting by designation.

1. In addition to the proceedings discussed in this opinion, Crown Coat has litigated other issues under this and a related contract, see, e. g., Crown Coat Front Co. v. United States, 292 F.2d 290, 154 Ct.Cl. 613 (1961); Crown Coat Front Co.,
Inc., 61–2 B. C. A. ¶ 3157 (ASBCA No. 7096) (1961).

2. See, e. g., United States v. Utah Constr. & Mining Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); Len Co. and Associates v. United States, 385 F.2d 438, 181 Ct.Cl. 29 (1967); Nager Elec. Co. v. United States, 368 F.2d 847, 862, 177 Ct.Cl. 234 (1966).

With these points in mind, we turn to the facts of this controversy, which can be related substantially as they appear in the opinion of the Supreme Court, 386 U.S. 503, 507–508, 87 S.Ct. 1177, 18 L. Ed.2d 256 (1967), but with important additions for matters the parties did not stress there. On May 14, 1956, Crown Coat contracted with the United States to supply a specified number of canteen covers which were to be lined with mildew-resistant felt of certain specifications. The Government, which was authorized to inspect materials to be used under the contract, tested and rejected certain samples of felt furnished by Crown Coat because they allegedly did not contain the contract quantities of mildew inhibitors. Crown Coat agreed to a price reduction of one-half cent per canteen cover, a total of $270.01, and was permitted to complete the contract with the rejected felt. Final delivery, originally scheduled for October 11, 1956, was made on December 14, 1956.

In March 1959, Crown Coat allegedly first discovered the nature of the tests which the United States had performed on the felt. Objecting to the use of such tests, Crown Coat filed a claim with the government contracting officer in October 1961. Crown Coat contended that use of an improper test was a "change in contract specifications" under the "changes" clause of the contract,[3] entitling it to an equitable adjustment in the form of a refund of the price reduction and compensation for increased costs occasioned by substantial delay resulting from the Government's rejection of the felt samples. The claim was brought before the contracting officer as a disagreement on a question of fact within the meaning of the "disputes" clause of the contract,[4] which requires that administrative relief be exhausted. On February 21, 1962, the contracting officer denied the claim which had been submitted to him; within a week, Crown Coat appealed to the Armed Services Board of Contract Appeals, a further administrative step required for assertion of a disputes clause claim. As the expiration of six years from the 1956 final delivery date approached, the Board had not yet ruled. On December 12, 1962, just two days before the end of the six-year period, Crown Coat filed a complaint in the Court of Claims under 28 U.S.C. § 1491, seeking $25,270.01 damages for breach of the contract by use of improper tests. Two months later, on February 28, 1963, the Board of Contract Appeals affirmed the contracting officer's decision.

On July 31, 1963, Crown Coat commenced the instant action in the United States District Court for the Southern District of New York pursuant to the Tucker Act, 28 U.S.C. § 1346(a) (2). The complaint alleged that the Board of Contract Appeals decision was capricious, arbitrary and not supported by substantial evidence, and asserted that use of improper and inaccurate tests entitled Crown Coat to an equitable adjustment under the contract's changes clause; the amount sought was $9,500.[5] At this point, therefore, there were then pending against the Government two actions growing out of the same transaction: one filed in the Court of Claims in December 1962, and the other filed in the district court in July 1963. The parties then returned to the Court of Claims. Because of the pendency of the district court proceedings, see 28 U.S.C. § 1500, Crown Coat moved to "suspend" its action in the Court of Claims, and the Government moved to dismiss. In Septem-

---

3. The actual "changes" clause employed in this contract does not appear in the record. The standardized version of a changes clause appears at 32 C.F.R. § 7.103–2 (1967).

4. The contract's "disputes" clause is set out in the Supreme Court's opinion, 386 U. S. at 505 n. 1, 87 S.Ct. 1177.

5. Under § 1346(a) (2), the district court's jurisdiction is limited to claims not exceeding $10,000. In order to invoke the court's jurisdiction, plaintiff therefore demanded judgment for "Nine thousand Five hundred dollars or such amount not exceeding Ten thousand dollars as the Court may deem just and equitable."

ber 1963, the Court of Claims dismissed the action, without prejudice.[6]

The district court action was thus left standing alone. In that action, the United States, among other things, asserted that the suit was time-barred under 28 U.S.C. § 2401(a), because it was brought more than six years after it had accrued.[7] Chief Judge Ryan agreed and dismissed the action on that ground.[8] This court, sitting *in banc*, affirmed that dismissal in a five-to-four decision, 363 F.2d 407 (1966). All nine judges agreed that Crown Coat's action accrued on December 14, 1956, the date of the final delivery of the canteen covers by Crown Coat. The issue that divided this court was whether the administrative proceeding before the contracting officer and the Board of Contract Appeals tolled the applicable six-year statute of limitations; if it did not, the district court suit in July 1963 was not timely. The majority held that the statute was not tolled; the minority thought that it was. Thereafter, the Supreme Court reversed, 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967), but on an entirely different theory, and did not discuss the tolling question that had divided this court. The Court held that a disputes clause action does not even accrue until the end of the required administrative proceedings. Therefore, if Crown Coat's claim in the district court action was of that type, it was not barred by the statute of limitations. However, the Court added the following significant statement (id. at 522, 87 S.Ct. at 1187):

> The Government in its answer to the complaint, however, denied that the claim arose under the contract, characterized it instead as a pure breach of contract claim which accrued no later than the date of the completion of the contract. The District Court did not decide this issue; nor do we. This matter will be open on remand to the District Court. If the claim is not within the disputes clause, the court may then determine whether it is time-barred.

Thus, Crown Coat found itself back in the district court with an indication from the Supreme Court that if its basic claim was after all of the breach rather than the disputes clause variety, it might be untimely. Thereupon, for reasons best known only to it, Crown Coat moved to amend its complaint in the district court to assert a breach of contract claim for $19,556.03. The Government consented to the change in the theory of the complaint. However, it contended that the statute of limitations clearly barred the breach action, since all nine judges of this court had ruled that the claim accrued in December 1956, more than six years before the action was filed in July 1963. Crown Coat replied, *inter alia*, that the action it had brought in the Court of Claims in December 1962, which was timely when filed,[9] tolled the statute of limitations. In any event, it urged the district court not to pass upon the statute of limitations question but to exercise its power to transfer the district court action to the Court of Claims under 28 U.S.C. § 1406(c). That section provides:

> If a case within the exclusive jurisdiction of the Court of Claims is filed in a district court, the district court shall, if it be in the interest of justice, transfer such case to the Court of Claims, where the case shall proceed

---

6. Crown Coat Front Co. v. United States, Dkt. No. 395–62 (Ct.Cl. Sept. 20, 1963).

7. Section 2401(a) provides:
   Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.

8. Crown Coat Front Co. v. United States, No. 63 Civ. 2281 (S.D.N.Y. Jan. 29, 1965).

9. 28 U.S.C. § 2501 provides a six-year statute of limitations for actions filed in the Court of Claims.

as if it had been filed in the Court of Claims on the date it was filed in the district court.

Crown Coat pointed out that if its amendment to increase the damages claimed was allowed, the district court would no longer have jurisdiction [10] and the case would be within the exclusive jurisdiction of the Court of Claims and, therefore, subject to transfer.

Judge Mansfield denied the damage amount amendment as not in the interest of justice. On the tolling issue, the judge reasoned that congressional consent to suit should be strictly construed as a waiver of sovereign immunity; he held that "Commencement of an action against the Government that is later dismissed without prejudice as improperly brought does not * * * toll the statute of limitations." Accordingly, he refused to transfer the district court action to the Court of Claims and dismissed the complaint. 275 F.Supp. 10 (S.D.N.Y.1967). It is from this decision that Crown Coat appeals.

Thus, we have the following chain of events: Crown Coat, having established at great effort that a disputes clause claim was timely, returned to the district court and voluntarily relinquished all that it had won. It agreed that its claim was a breach claim even though all nine active judges of this court had apparently ruled *in banc* that any claim for breach of contract accrued no later than December 14, 1956, more than six years before the action in the district court was commenced. Nevertheless, its motion in the district court for an amendment of theory and increase of damages and transfer to the Court of Claims made no mention of the statute of limitations problem. Then, when the Government raised the point, Crown Coat first took the position that the district court should transfer the action to the Court of Claims without deciding the question. Finally, it met the issue head-on with two arguments not made before: (1) The filing of its 1962 action in the Court of Claims

tolled the statute of limitations until the district court complaint was filed; and (2) its claim did not arise until March 1959, when it discovered the nature of the tests used by the Government, because until that date the Government "concealed" the facts.

■■■ The issues before us are whether Judge Mansfield erred in refusing to allow an increase in damages claimed and in dismissing the complaint. Decision of the first question rested in the judge's discretion. While it is true that Rule 15 of the Federal Rules of Civil Procedure provides that ordinarily leave to amend "shall be freely given when justice so requires," these were most unusual circumstances. Crown Coat had offered as its claim three different figures at three different times. Originally, in 1962, it sought $25,270.01 in the Court of Claims; in 1963, in the district court, it asked for $9,500; finally, its proposed amended complaint sought $19,556.03. Although Crown Coat had first sued in the Court of Claims in 1962, it later aborted that suit itself by bringing another action in the Southern District. Moreover, when faced in 1963 with the imminent dismissal of its Court of Claims action because of the pendency of the district court suit, it chose to allow the latter to continue rather than to amend or add to its original Court of Claims complaint. Cf. Nager Elec. Co. v. United States, 368 F.2d 847, 854–857 (1966). We agree with Judge Mansfield, 275 F.Supp. at 14–15:

> This is not a case of inadvertent error but one where suit was deliberately brought in this forum with full knowledge of its jurisdictional limitations instead of exercising its right to join two alternate theories ("breach" and "disputes clause") in one suit in the Court of Claims, where the plaintiff now seeks a transfer for a procedural or tactical advantage, after having invoked the facilities of the federal courts all the way to the Supreme Court, at no little time and expense

10. See note 5 supra.

to the Government. After such a tour de force the additional claim appears frivolous, and further shuttling back and forth between this Court and the Court of Claims is unjustified. Accordingly the motion to amend is denied. [Footnote omitted.]

Accordingly, we hold that the judge did not abuse his discretion in denying amendment of the complaint to allege greater damages.

We turn now to the judge's decision to dismiss the complaint. The argument that the Government concealed the test method employed, so that the statute of limitations was tolled, was properly rejected by the judge for the reasons set forth in his opinion, id. at 15–16, and requires no further discussion. The exhuming of the 1962 action in the Court of Claims as a separate ground for tolling the statute of limitations does raise a more substantial question.[11] But after careful analysis, we conclude that this argument should also be rejected.

■■■ Crown Coat conceded in the district court before Judge Mansfield, id. at 15, that a breach claim accrued on December 14, 1956, a concession consistent with the opinions of this court in its in banc consideration of the case. The basic issue is whether the events of this case justify tolling the time bar of 28 U.S.C. § 2401(a).[12] Crown Coat litigated this question through the district court, this court (in banc), and the Supreme Court without once offering the 1962 Court of Claims action as a basis for tolling. In the prior decision of this court sitting in banc, the majority refused to construe section 2401(a) to allow tolling, even though faced with an appealing argument; i. e., that the Government, which

requires administrative proceedings on disputes clause claims, can by drawing those proceedings out long enough "effectively defeat the rights of claimants to present their claims to a court of law," 363 F.2d at 415. That justification for tolling was certainly more powerful than the one offered now, which is marred by Crown Coat's own inconsistent actions. It is true that this new tolling contention was not specifically made by Crown Coat to the in banc court so that traditional law of the case concepts would not technically apply. However, we regard the court's refusal to construe the statute of limitations as tolled by the appealing facts then offered as overpowering evidence of how it would have ruled on the argument Crown Coat now makes. It is significant that the prior in banc decision of this court was not overruled on the tolling issue; the Supreme Court did not discuss or decide it. Moreover, there does come a time when additional arguments to make the same ultimate point should be disregarded unless a good reason exists for the earlier omission. Cf. Zdanok v. Glidden Co., 327 F.2d 944, 953 (2d Cir.), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964). Certainly, if after affirmance here, plaintiff were to advance still another argument for tolling, we think the district court or we could properly disregard it. We think that the situation now before us is much the same. In the district court the first time around, plaintiff could have urged the tolling effect of the 1962 action in the Court of Claims, whether plaintiff's claim was regarded as a breach or disputes clause type. In fact, before Chief Judge Ryan, plaintiff clearly envisioned both

---

11. In essence, Crown Coat argues that it is within the intent of Congress to allow tolling when a properly filed and timely complaint in one federal court (Court of Claims) is later replaced by an equally proper but untimely action in another federal court (a district court). Compare Burnett v. New York Central R.R., 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). The Government argues that bringing suit in the Court of Claims

against the Government does not toll the separate statute of limitations for suing the Government in the district court, particularly when the former action is dismissed because of plaintiff's own acts. The Government points out that were this not the case, the transfer provisions of 28 .U.S.C. §§ 1406(a), (c) would be unnecessary.

12. See note 7 supra.

possibilities,[13] yet it chose to ignore the argument. Under all of the circumstances, whatever might be the views of some of us were this or related statute of limitations issues [14] raised in a different case, we do not feel justified in considering further the tolling effect of plaintiff's 1962 action in the Court of Claims.

Accordingly, we affirm the decision below.

---

13. See Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment at 9–10, Supplemental Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment at 1–2, and Plaintiff's Reply Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment at 2, Crown Coat Front Co. v. United States, No. 63 Civ. 2281 (S.D.N.Y. Jan. 29, 1965).

14. E. g., in Nager Elec. Co. v. United States, 368 F.2d 847, 177 Ct.Cl. 234 (1966), the court stated that when a contractor has both disputes and breach claims under a single contract, suit on the latter can be delayed until administrative proceedings in the former are completed. We have not considered that point because Crown Coat clearly states it has only a breach claim.